Bruce BROWN, Plaintiff,

v.

The EVENING NEWS ASSOCIATION, a Michigan corporation, and Post Newsweek Stations, Michigan, Inc., a foreign corporation, Defendants.

Civ. No. 78–71995.

United States District Court, E. D. Michigan, S. D.

July 23, 1979.

As Amended July 31 and Aug. 22, 1979.

Bruce V. Brown, Detroit, Mich., for plaintiff.

William M. Saxton, Butzel, Long, Gust, Klein & Van Zile, Detroit, Mich., for Evening News Assn.

Ray Reynolds Graves, Detroit, Mich., for Post Newsweek Stations.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

Bruce Brown filed this employment discrimination suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* against The Evening News Association (ENA) and Post Newsweek Stations, Michigan, Inc. (PNSM), claiming that he applied for a job with Channel 4 in Detroit, then WWJ–TV, and that he was not hired because of the racially discriminatory practices of defendant ENA, then owner of Channel 4.

At the time that plaintiff alleges he was discriminated against, ENA, in addition to owning and operating Channel 4 in Detroit, owned and published The Detroit News, a major daily newspaper in the Detroit area. Also at that time, Post Newsweek Stations, Inc., the owner of all the stock of PNSM, owned Channel 9 in Washington, D.C. Post Newsweek Stations, Inc., in turn, is a wholly owned subsidiary of the Washington Post Company. Because Post Newsweek Stations, Inc., and ENA were fearful of the potential antitrust implications of owning two major media sources in a single market, they decided to trade television stations. Now, ENA owns Channel 9 in Washington and the Detroit News, while Post Newsweek Stations, Inc., through PNSM, owns Channel 4 in Detroit.

It is alleged in the second amended complaint that for purposes of this suit, PNSM is the legal successor of ENA, and is therefore liable along with ENA for any relief, monetary or injunctive, that this court might order, despite the fact that there are no allegations of actual wrongdoing by PNSM.

PNSM has moved for summary judgment in its favor, claiming that as a matter of law, it is not a successor to ENA under the circumstances and for the purposes of this suit. For the reasons that follow, that motion is granted.

The gist of the PNSM argument is that since it did nothing wrong even if the claims of the plaintiff are accepted as true, it should not be held liable. This argument is too broad. There are a number of circumstances where a party who is totally without personal blame is held to answer to an injured person. This is true in the areas of strict liability in tort, respondeat superior, and the breach of the duty of a union to fairly represent its employees. *See Rylands v. Fletcher*, [1868] L.R. 3 H.L. 330; *Williams v. United States*, 248 F.2d 492 (9th Cir. 1957), *cert. denied*, 355 U.S. 953, 78 S.Ct. 537, 2 L.Ed.2d 529 (1958); *Hines v. Anchor Motor Freight*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976).

The plaintiff alleges that he was wrongfully denied a job at Channel 4 in Detroit, and since he is asking this court to force Channel 4 to hire him at this time, plaintiff asserts that Channel 4, and thus PNSM, must be kept in court. It is possible under the claims made by the plaintiff for the court, after trial, to rule that plaintiff was injured by ENA. If the court so rules, plaintiff now claims that the only way to fully relieve the injury is to order Channel 4, through PNSM, to hire plaintiff. *E.E. O.C. v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086 (6th Cir. 1974).

The prayer for relief in plaintiff's Second Amended Complaint, reads as follows:

WHEREFORE, PLAINTIFF prays that this Court issue a judgment affording Plaintiff all of the relief to which he is entitled by law, to wit:

A. An order directing Defendant Post-Newsweek to hire Plaintiff in the position described above, or a substantially similar position.

B. In the alternative, an order directing Defendant Evening News Association to hire Plaintiff in a position substantially similar to the position for which he applied.

C. An order directing Defendants, jointly and severally, to make Plaintiff whole by reimbursing him for all consequential losses he sustained, including, but not limited to, lost pay, fringe benefits, incidental travel expenses.

D. Actual attorney fees and costs and all further equitable relief provided for by Title VII of the 1964 Civil Rights Act.

E. An amount of money consistent with the evidence to fully compensate Plaintiff for all consequential losses including pecuniary losses by being denied employment, damages for emotional distress, and medical expenses attendant thereto, damages to compensate Plaintiff for the insult of being denied rights guaranteed him by law, and damages to compensate Plaintiff for the damage done to his career as a newscaster and for the lost opportunity to gain experience and reputation in said career.

F. Exemplary and/or punitive damages.

G. Costs, attorney fees and interest to date, as well as all further relief, legal or equitable, to which Plaintiff may be entitled.

The question for this court to decide is whether PNSM, as the successor of ENA in the operation of Channel 4 in Detroit, should have any responsibility to the plaintiff under the facts alleged in this case. The United States Court of Appeals for the Sixth Circuit has set out a number of factors that must be considered by the court. *E.E.O.C. v. MacMillan Bloedel Containers, Inc., supra.* These are: (1) Whether the alleged successor employer had notice of the charge of discrimination before it took over, (2) the ability of the predecessor to provide relief, (3) whether there has been a substantial continuity of business operation, (4) whether the new employer uses the same plant, (5) whether the new employer uses the same or substantially the same work force, (6) whether the new employer uses the same or substantially the same supervisory personnel, (7) whether the same jobs exist under substantially the same working

conditions, (8) whether the new employer uses the same machinery, equipment, and methods of production, and (9) whether the new owner produces the same product.

These factors were taken from the context of the Labor Law successorship doctrine, and for that reason some of them may not have as much applicability to employment discrimination cases.

No one of these factors is controlling; the court must look at all of them along with any others that present themselves in the case before it, and it must make its decision by balancing the interests of the plaintiff and the national policy of abhorrence toward employment discrimination against the interest of the successor operator of Channel 4, PNSM, which it is admitted has been guilty of no acts of discrimination. *Perma Vinyl Corp.*, 164 N.L. R.B. (1967); *Slack v. Havens*, 522 F.2d 1091 (9th Cir. 1975); *Howard Johnson Co., Inc. v. Detroit Local Joint Executive Board*, 417 U.S. 249, 94 S.Ct. 2236, 41 L.Ed.2d 46 (1974).

In this case, PNSM has admitted that the plaintiff's claim against ENA was disclosed to it before the transfer, so the presence of factor (1) is clear.

Factors (4) through (9) are best considered as sub-parts of factor (3). They have been appropriately termed the "sameness" factors. *Slack v. Havens, supra.* In this case, it is clear that there has been a substantial continuity of business operations (see factor (3)) as a whole, despite the fact that there have been changes in supervisory personnel (see factor (6)). *See N.L. R.B. v. Wayne Convalescent Center, Inc.*, 465 F.2d 1039 (6th Cir. 1972).[1]

PNSM argues that the television broadcasting industry is unique because of the strictures involved in FCC licensing. It attempts to show that this industry is less mobile and less flexible than any other simply because of licensing, and in so doing argues that the "sameness" factors should be given less weight than they are given in other contexts.

The facts of this very case prove this argument to be weak. Here, ENA quickly, completely, and easily moved its television broadcasting business from Detroit to Washington, D.C., and Post Newsweek Stations, Inc., created PNSM to handle its broadcasting business in Detroit. While this transaction was admittedly unique, there is no reason to believe that the market for this sort of business should require a consideration of different factors. PNSM puts great emphasis on the fact that it could not take its license to operate Channel 9 and use it to set up a new station in some other city of its choice. This, however, has no relevance to the question at hand. The fact is that PNSM did purchase the right to broadcast over Channel 4 in Detroit; this court must decide what effect that purchase had on the relationship between the plaintiff and the two defendants.

Having determined that there was the required notice and that there is the required "sameness," the court must consider the one remaining factor—the ability of ENA to provide relief. In this case, ENA is an ongoing corporation, is in sound financial condition, owns The Detroit News, a daily newspaper in Detroit, and owns and operates WDVM–TV, a television station in Washington, D.C. It is quite clearly in a position to provide a great deal of relief should it be found liable. The question is whether the relief that it could provide is enough to justify dismissing PNSM as a party to this lawsuit.

1. In an argument related to "sameness," PNSM points to the provision in the contract between PNSM and ENA which provides that PNSM does not assume any liabilities of ENA and that ENA will indemnify PNSM for liabilities of any kind that PNSM is forced to incur as a result of things that took place before the transfer. PNSM claims that this provision somehow protects it from liability and requires the summary judgment that it prayed for in this motion. While this provision is quite relevant to the recourse that PNSM may have against ENA if it is held liable in this or any other suit, it relates only to the relationship between PNSM and ENA and is irrelevant to the relationship between PNSM and the plaintiff. This argument by PNSM is without merit.

Plaintiff now claims that the most important part of the relief he is seeking is a job at Channel 4 in Detroit, although the original complaint does not ask for this relief and the amendment was made only after it became clear that the case would otherwise be dismissed. Plaintiff urges alternative forms of relief against ENA, such as money damages, a job at Channel 9 in Washington, and a job at the Detroit News, but he now in the amended complaint for the first time claims that he is entitled to the exact relief that he would have been entitled to if there had been no transfer of ownership of Channel 4 which includes a job at Channel 4. Since such a job could only be awarded under the auspices of PNSM, plaintiff now argues for this reason for the first time that that defendant must remain in the lawsuit.

In *E.E.O.C. v. MacMillan Bloedel Containers, Inc., supra,* the Sixth Circuit made the statement concerning employment discrimination cases brought against potential successors that "The primary concern, however is to provide the discriminatee with full relief." 503 F.2d at 1092. Plaintiff would like this court to zero in on the word "full" and interpret it to permit this court to order PNSM to give him a job at Channel 4.

A thorough reading of not only the *MacMillan* case but also the Labor Law successorship cases on which *MacMillan* was founded shows that to place such emphasis on the word "full" would be to disregard other factors and to undermine the balancing requirement of *MacMillan.* Earlier in *MacMillan,* the court said, "Failure to hold a successor employer liable for the discriminatory practices of its predecessor could emasculate the relief provisions of Title VII by leaving the discriminatee without a remedy or without a complete remedy." 503 F.2d at 1091. This statement does not completely and satisfactorily answer the question either. There is a major difference between the avoidance of emasculation of the relief provisions and the provision of full and complete relief. This court is charged with the responsibility of drawing the line between what will and will not be allowed.

It is clear from a reading of the United States Supreme Court opinions on successorship in the Labor Law context, relied on by the 6th Circuit Court of Appeals in *MacMillan,* that in this kind of case, the court must balance the interests of the discriminatee and the national policy against such discrimination with those of the bona fide new employer. *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); *N.L.R.B. v. Burns International Security Services,* 406 U.S. 272, 92 S.Ct. 99, 30 L.Ed.2d 49 (1972); *Golden State Bottling Co., Inc. v. N.L.R.B.,* 414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973); *Howard Johnson Co. v. Detroit Local Joint Executive Board,* 417 U.S. 249, 94 S.Ct. 2236, 41 L.Ed.2d 46 (1974). Where the harm to the discriminatee and to the national policy that would flow from a finding of no successorship is great, a substantial amount of harm to the new employer must and will be tolerated. However, in a context where the potential injuries to the discriminatee and to the national policy are slight, the court need not force the admittedly innocent new employer to suffer.

In *Wiley,* the court put the emphasis on the fact that not all of a complainant's rights were lost when his employer sold the business to another entity. In *Burns International,* the union was not able to hold the new employer to the substantive provisions of the collective bargaining agreement in existence at the time of the transfer of ownership; only the obligation to bargain with the incumbent union was imposed.

*Golden State Bottling* noted that "the conflicting legitimate interest of the bona fide successor, the public, and the affected employee" must be carefully balanced. 414 U.S. at 181, 94 S.Ct. 414, 38 L.Ed.2d 388. This clearly shows that the interests of the employee and the public do not automatically outweigh the interests of the alleged successor.

Finally, in *Howard Johnson,* the court expressly noted the important distinction

between a merger, where the predecessor employer ceases to exist, and a sale of some assets, where the predecessor remains in existence and may be called on by the court to participate in formulating a remedy. In this context, the Court said, "Here . ., because the [predecessors] continue as viable entities with substantial retained assets, the Union does have a *realistic remedy* . . ." (emphasis added) 417 U.S. at 257, 94 S.Ct. at 2241.

This court believes that the concept of a "realistic remedy" works best in dealing with surrounding problems in the field of employment discrimination. As the court noted in *Howard Johnson*, 417 U.S. at 256, 94 S.Ct. at 2240. "[I]n light of the difficulty of the successorship question, the myriad factual circumstances and legal contexts in which it can arise, and the absence of congressional guidance as to its resolution, emphasis on the facts of each case as it arises is especially appropriate." This seems to be what the Court of Appeals was suggesting in *E.E.O.C. v. MacMillan Bloedel Containers, Inc., supra.*

Thus, the job of the court is to determine whether the new employer is necessary, in the factual situation that is presented, to the formation of a "realistic remedy" for the discriminatee.

This is a case in which the predecessor corporation, ENA, is in a position to provide substantially all of the relief that plaintiff might eventually be entitled to and certainly all of it that the plaintiff thought was important when the suit was first filed and until the problem was called to his attention by the motion to dismiss. If liability is found, plaintiff might be awarded his choice of several alternatives including money damages, jobs in Detroit (with the Detroit News), and jobs in Washington (with WDVM). Such relief would be substantial and would assure that there was no emasculation of the policies of Title VII. That being the case, there is no need for the court to maintain a hold over an admittedly innocent PNSM.

For the above reasons, the motion is granted.

So ordered.