**Maswamba MUSIKIWAMBA,**
**Plaintiff-Appellant,**

v.

**ESSI, INC. and Shalabh Kumar,**
**Defendants-Appellees.**

No. 83–3268.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 16, 1984.

Decided April 12, 1985.

As Amended April 16, 1985.

Rehearing and Rehearing In Banc
Denied May 13, 1985.

---

John E. Juergensmeyer, Juergensmeyer & Assoc., Elgin, Ill., for plaintiff-appellant.

Scott A. Creswell, Mass, Miller & Josephson, Chicago, Ill., Lorraine C. Davis, Atty.

E.E.O.C., Washington, D.C., for defendants-appellees.

Before CUMMINGS, Chief Judge, ESCHBACH, Circuit Judge, and SWYGERT, Senior Circuit Judge.

SWYGERT, Senior Circuit Judge.

This case presents a question of first impression in this circuit: does the successor doctrine apply to claims for employment discrimination brought under the Civil Rights Act of 1866, 42 U.S.C. § 1981 (1982)? The district judge held that the doctrine does not apply; accordingly, she dismissed the federal discrimination claims and pendent state law claims against the successor corporation, ESSI, Inc. ("ESSI") and its president and sole shareholder, Shalabh Kumar. We affirm in part, reverse in part, and remand for further proceedings.

I

Plaintiff Maswamba Musikiwamba is a thirty-year-old black man. In the fall of 1978 he was hired as an expeditor by defendants Electronic Support Systems, Inc. ("Electronic") and Gary Crews and Jack M. Heeren, officers of Electronic. As a condition of employment, Musikiwamba was required to sign an agreement containing a broad covenant not to compete. Musikiwamba alleges that similarly situated white expeditors at Electronic were not required to sign such an agreement. In November 1978 Musikiwamba became a major accounts representative at Electronic. Plaintiff claims that he was qualified for this position and that he performed his job satisfactorily, but that he was denied the same sales commissions and salary granted to all of the other sales representatives who were white. Plaintiff further claims that in January 1979 he was promised, but never received, a sales commission equal to that paid other sales representatives. Musikiwamba was discharged from Electronic on October 27, 1980. He alleges that he was replaced by a white employee who was paid a substantially higher salary.

Approximately one month after his discharge, Musikiwamba accepted a job with one of Electronic's major competitors. Electronic subsequently sued Musikiwamba for violation of the covenant not to compete, but, for reasons that are unclear, voluntarily withdrew the lawsuit on October 2, 1981.

On December 4, 1981, Musikiwamba filed suit against Electronic, Crews, and Heeren pursuant to 42 U.S.C. § 1981 alleging that they had discharged him and denied him sales commissions and a higher salary because he is black. He claimed $650,000 in actual and punitive damages. The defendants answered that Musikiwamba's job was not the same as that of the white employees and that he was therefore not entitled to commissions or a higher salary. They also claimed that Musikiwamba was discharged as a result of a severe curtailment in Electronic's business.

On November 1, 1982, Musikiwamba filed an amended complaint alleging the same facts, but adding a claim for "intentional discrimination" under section 1981 and state law claims for breach of contract, *quantum meruit*, wrongful discharge, and breach of implied contract. He claimed $300,000 in compensatory damages and one million dollars in punitive damages.

Throughout 1982 and the first few months of 1983 substantial discovery took place. On July 12, 1983, Musikiwamba received from ESSI a "Notice to Creditors of Bulk Transfer." That notice informed Musikiwamba that Electronic was transferring substantially all of its assets to ESSI, pursuant to Illinois' Bulk Transfer Act, Ill.Rev. Stat., ch. 26 Art. 6, §§ 6–101–106 (1984). The transfer was scheduled to take place on July 19, 1983. The notice stated that the sale/purchase involved the transfer of property consisting of "furniture, fixtures, and equipment used by Electronic in the manufacture of printed circuit boards, accounts receivable, trade names, trademark, notes receivable, telephone numbers, inventory, materials and supplies, customer list pricing formulas and customer orders, and work in process." The estimated total of

Electronic's secured and unsecured debts was $2,235,000, and the "amount of new consideration" to be paid for the assets of Electronic by ESSI was $1,480,000.

On July 19, the day the transfer of assets was to occur, Musikiwamba filed a "Verified Petition for a Temporary Restraining Order and a Motion to Add Additional Defendants," seeking to enjoin the sale of the assets and to add ESSI and Shalabh Kumar as defendants. He claimed that he was a creditor of Electronic, and that the sale was for inadequate consideration, the actual consideration being $855,000 less than the total of the existing secured and unsecured debts. He further claimed that he would be irreparably harmed because after the sale Electronic and its corporate officers would have no assets with which to pay his claims and because he would lose access to certain documents which were crucial to the prosecution of his lawsuit. On the same day, Musikiwamba voluntarily withdrew his petition in its entirety when the district judge entered an order requiring ESSI and Kumar to preserve and make available the documents which Musikiwamba claimed he needed. Defendants ESSI and Kumar entered an appearance on that day solely for the purposes of the hearing and not as party defendants, although it is unclear from the record if they were added as party defendants on that day or on July 22. *See* Order of Protection in Discovery (July 19, 1983); Minute Order (August 3, 1983). The transfer of assets took place later on July 19.

On August 19, 1983, Musikiwamba filed a second amended complaint specifically naming ESSI and Kumar as additional defendants. He alleged that on July 19 ESSI and Kumar became "successors" of Electronic because: (1) there was a substantial continuity of business operations; (2) ESSI was using the same plant, equipment, machinery and methods of process, and employing the same work force and the same supervisory personnel; and (3) ESSI continued the same jobs under substantially the same working conditions. He further al-

leged that Kumar and ESSI had knowledge of his pending lawsuit against Electronic prior to the transfer on July 19, 1983. He alleged that on June 28, 1983, Kumar met with Musikiwamba and his attorney and offered to settle the case. Finally, he alleged that the balance of Electronic's assets had been transferred to parties other than ESSI leaving Electronic, Heeren, and Crews without an ability to provide relief. Plaintiff's claims against ESSI and Kumar are identical to those made against the original defendants, and those original defendants are retained as party defendants.

On August 26, 1983, ESSI and Kumar filed a motion to dismiss all claims against them on the ground that as mere purchasers of the assets of Electronic they were not liable for the debts of Electronic. The district court granted the motion because in its view "... it is inappropriate to apply the successor doctrine in § 1981 actions." District Court Memorandum Opinion and Order at 1. The district judge first questioned whether that doctrine was even applicable to employment discrimination claims brought under Title VII of the Civil Rights Act of 1964, *codified as amended* at 42 U.S.C. §§ 2000e–2000e–17 (1982) ("Title VII"). She reasoned that even if it were, the substantial differences existing between Title VII and section 1981 militated against extending the successor doctrine to claims of employment discrimination brought under section 1981. The district judge noted that under section 1981 a plaintiff must prove discriminatory intent or purpose; if he brings an action under Title VII, however, he may or may not need to prove discriminatory intent, depending upon whether he proceeds on a theory of disparate impact or disparate treatment. The district judge· believed that a strict requirement of discriminatory intent "may be somewhat at odds with an easy test for vicarious liability." District Court Memorandum Opinion and Order at 2.

The district judge also observed that the National Labor Relations Act, *codified as amended* at 29 U.S.C. §§ 151–69 (1982) ("the NLRA"), and Title VII were both formulated with the objective of promoting peace in the work place and good labor relations and that the successor doctrine was developed to further that objective. Section 1981, on the other hand, was not adopted to remedy labor relations problems, and it was never designed to regulate the terms and conditions of employment. The district judge also reasoned that section 1981 is not limited to claims for employment discrimination; extending the successor doctrine to a section 1981 claim for employment discrimination might lead unnecessarily to the extension of that doctrine to other types of section 1981 claims. Creating a limited exception for employment discrimination claims brought pursuant to section 1981 would be arbitrary and perhaps unmanageable. Accordingly, she dismissed the federal and pendent state law claims against ESSI and Kumar. She specifically rejected plaintiff's argument that Kumar could be held personally liable on all the claims, federal and state, because he incorporated ESSI and knew of the claim prior to the transfer, even though he had not personally discriminated against Musikiwamba.

We hold that the successor doctrine may be applied in section 1981 claims for employment discrimination. We note, however, that the complaint in the instant case does not properly allege with specificity a claim for successor liability. Nonetheless, we believe that the plaintiff should be given an opportunity on remand to amend the complaint to cure its deficiencies. We further hold that the federal claims against Kumar were properly dismissed because Kumar is not a successor and because there are no allegations that Kumar personally discriminated against Musikiwamba. An incorporator, officer, and shareholder of a successor corporation incurs no personal liability for the predecessor's illegal discrimination merely because he knew of the pending lawsuit before the sale of its assets and because he negotiated for the sale of the assets. Finally, we hold that the district judge did not abuse her discretion in dismissing the state law claims against Kumar.

## II

The Supreme Court first considered the doctrine of successor liability in *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), a case arising under section 301 of the NLRA. In that case, the Court held that a successor must bargain with the union recognized by the predecessor, and it must arbitrate under the collective bargaining contract agreed to by the predecessor the extent to which it was bound by the provisions of the contract. This holding was premised specifically on considerations of national labor policy. The Court observed that arbitration plays a central role in promoting the federal policy of peaceful settlement of labor disputes and that labor contracts sometimes are accorded special considerations not applicable to routine contracts. The Court added that employees are often helpless to protect their statutory rights when their employer sells the business or its assets. Thus employers' rights freely to "rearrange their business and even to eliminate themselves as employers [must] be balanced by some protection to the employees from a sudden change in the employment relationship." *Id.* at 549, 84 S.Ct. at 914.

In *NLRB v. Burns International Security Services, Inc.*, 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972), the Court held that even though a successor could be required to bargain and arbitrate with the incumbent union, a successor was not bound by all of the substantive provisions of the predecessor's collective bargaining agreement. The Court again invoked federal labor policy and reasoned that the policy of private bargaining without official compulsion would be substantially undermined if a successor were required to assume the predecessor's contract. It also noted that such a requirement might inhibit the free transfer of capital and restrict an employer in making necessary changes in his business. *Id.* at 281–91, 92 S.Ct. at 1579–84.

*Howard Johnson Co. v. Hotel Employees*, 417 U.S. 249, 94 S.Ct. 2236, 41 L.Ed.2d 46 (1974), was merely another extension of the balancing approach applied in *John Wiley & Sons, Inc.* and *Burns International Security Services, Inc.* In *Howard Johnson Co.*, the Court held that a successor employer was not required to hire any of the predecessor's employees and that when the successor only hired a few of the predecessor's employees he was not required to arbitrate with the incumbent union. The Court distinguished *John Wiley & Sons, Inc.* and *Burns International Security Services, Inc.* on the basis that in *Howard Johnson Co.* the corporate transaction involved the sale of only *some* of the assets and the predecessors remained as "viable corporate entities." *Id.* at 257, 94 S.Ct. at 2240. In the Court's view, the balance favored the successor because the predecessor was available to provide the union with "a realistic remedy." *Id.* Moreover, in *Howard Johnson Co.*, the successor hired only a *few* of the predecessor's employees, whereas in *John Wiley & Sons, Inc.* and *Burns International Security Services, Inc.* the successors hired most if not all of the predecessors' employees. Thus, the predecessor employees' rights to be represented by a union of their choosing was insubstantial when weighed against the interest of a majority of the successors' employees to choose their own bargaining representative. *Id.* at 258, 94 S.Ct. at 2241. Finally, by purchasing only some of the predecessor's assets, the successor did not continue to operate the predecessor's business *in toto*. By contrast, in *John Wiley & Sons, Inc.* the predecessor merged into the successor and thus "holding ... [the successor] bound to arbitrate under its predecessor's collective-bargaining agreement may have been fairly within the reasonable expectations of the parties." *Id.* at 257, 94 S.Ct. at 2241.

In *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973), the only other successor liability case to reach the Supreme Court, the Court again employed a balancing test. It held that an employer who acquires substantial assets of a predecessor and who continues, without interruptions or substantial

change, the predecessor's business operations and who has notice of a pending unfair labor practice charge at the time he acquires the assets can be required to remedy the predecessor's unfair labor practice. The Court reasoned that the federal policy of avoiding labor disputes, of promoting the free exercise of an employee's rights under the NLRA, and of providing victimized employees with a remedy could be achieved at a minimal cost to *bona fide* successors who acquired the predecessor's assets with notice of the charge. Any liability for backpay, reinstatement, or seniority imposed on the successor could have been reflected in the purchase price for the assets or in an indemnification clause in the sales agreement. *Id.* at 182–85, 94 S.Ct. at 424–25.

In each of these cases, the Court found that the successor doctrine was *applicable* to the particular cause of action because it promoted the well-established national policy of "extending protection to and providing relief to the victims of prohibited employment practices," *Equal Employment Opportunity Commission v. MacMillan Bloedel Containers, Inc.,* 503 F.2d 1086, 1091 (6th Cir.1974). Nonetheless, the Court found that in *Burns International Security Services, Inc.* and *Howard Johnson Co.* successor liability could not be *imposed* because the legal obligation sought to be imposed on the successor substantially outweighed the benefits to be gained by the injured union or employees or the public. As the Court said in *Howard Johnson Co.,* the question in these cases is not whether the successor doctrine should *ever* apply but whether under the particular facts of the case to be decided successor liability could equitably be imposed to further a clearly established national objective.

■ In our view, the analysis set forth by the Supreme Court to justify successor liability in cases arising under the NLRA also justifies successor liability in employment discrimination cases. In both types of cases, the same three considerations surface. First, an overriding federal policy against unfair and arbitrary employment practices is implicated. The special concern with employment practices cannot be sufficiently underscored. In passing both the NLRA and the antidiscrimination statutes, it is clear that Congress' main objective was to eradicate practices that arbitrarily interfered with a person's ability to earn his livelihood.

Second, the victim of the illegal employment practice is helpless to protect his rights against an employer's change in the business. A predecessor's illegal act may have left the employee without a job, promotion, or other employment benefits that he cannot now obtain from another employer, but that he might have received from the successor had the predecessor not violated the employee's rights. Third, the successor can provide relief at minimum cost. *Cf. United States v. Price,* 523 F.Supp. 1055 (D.N.J.1981), *aff'd,* 688 F.2d 204 (3d Cir.1982) (interpreting section 7003 of Resource Conservation and Recovery Act, 42 U.S.C. § 6973 (1976 & Supp. IV 1980) as imposing liability on successor because of public policy necessitating clean up of hazardous waste sites); *United States v. Waste Industries,* 556 F.Supp. 1301 (E.D. N.C.1982) (finding purchaser liable for sellers' hazardous waste disposal because they are current owners of continuing nuisance); Comment, *Changes in the Ownership of Hazardous Disposal Sites: Original and Successor Liability,* 67 Marq.L.Rev. 691, 724–25 (1984) (arguing that in the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("Superfund"), 42 U.S.C. §§ 9601–9657 (Supp. IV 1980), Congress abrogated traditional common law limitations on successor liability because of substantial national interest in cleaning up hazardous waste sites).

The defendants argue that successor liability should not be applied to employment discrimination claims brought under section 1981 because, in order to recover, a plaintiff must prove that the predecessor intentionally discriminated against him. Defendants, however, do not explain why this is relevant to the application or imposition

of successor liability. In these successor cases, liability is imposed on the successor for the acts, intentional or otherwise, of a predecessor solely because the policies of the laws at issue are substantially promoted. The courts specifically recognize that the successor is an *innocent* party, and it is precisely because the successor is innocent that the courts are reluctant to impose successor liability unless the burden placed on the successor is *de minimis,* can easily be diverted to the culpable party, and is substantially outweighed by the policies of the statute. As the Ninth Circuit has recently noted, "[i]n successorship cases, it is necessary to distinguish between the necessity for finding discrimination in the first instance, and the enforcement of an already established obligation against a successor employer." *Bates v. Pacific Maritime Assoc.,* 744 F.2d 705, 709 (9th Cir. 1984).

Supreme Court precedent supports this conclusion. In *Golden State Bottling Co.,* 414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388, the Court held that liability could be imposed on a successor for a predecessor's discharge of an employee because of that employee's union activities. This discharge violated section 8(a)(3) of the NLRA, 29 U.S.C. § 158(a)(3), and "a finding of a violation [of that section] normally turns on whether the discriminatory conduct was motivated by an antiunion purpose." *NLRB v. Great Dane Trailers,* 388 U.S. 26, 33, 87 S.Ct. 1792, 1797, 18 L.Ed.2d 1027 (1967). The Court never suggested that a requirement of proof of discriminatory intent might absolve a successor of liability. Thus, in our view, the Court has already determined that the fact that a plaintiff must prove that a predecessor *intended* to violate his rights does not bar the imposition of successor liability. *See also General Building Contractors Ass'n v. Penn,* 458 U.S. 375, 404, 102 S.Ct. 3141, 3157, 73 L.Ed.2d 835 (1982) (O'Connor, J., concurring) (suggesting that under certain circumstances the employer may be held vicariously liable for a union's violations of section 1981).

Recent decisions from this and other circuits make clear that intent is no longer a pivotal factor when deciding whether to impose liability on an innocent party for another's discriminatory acts. *See Horn v. Duke Homes,* 755 F.2d 599 (7th Cir.1985); *Henson v. City of Dundee,* 682 F.2d 897 (11th Cir.1982); *Bundy v. Jackson,* 641 F.2d 934 (D.C.Cir.1981). In *Horn* this circuit addressed the issue of whether vicarious liability could be imposed on an employer for one of its supervisor's sexual harassment of a female employee. The court recognized that in general an employer's liability for its employees' wrongful acts are limited to those committed within the employees' scope of employment. Nonetheless, the court held that an employer is strictly liable for the sexually discriminatory acts of one of its supervisors. The court noted that in a sense the supervisor was acting within the scope of his employment because he employed his almost unlimited supervisory powers to coerce sexual favors from subordinates. The court also noted that the federal policy of eradicating sex discrimination in the workplace is substantially promoted by placing liability on the employer, who is in the best position to hire, fire, and control "sexist supervisors." Finally, the court observed that the modern justification for imposing vicarious liability is that society's best interests are served when the entire burden of the wrong does not fall on an injured party who is less able to bear that burden than the innocent third party. *Horn* demonstrates that liability for employee discrimination should be imposed on the "most efficient cost avoider"; as a result, "strict liability" for employment discrimination should be the norm rather than the exception. Thus, in the employment discrimination context, whether the plaintiff must prove that the predecessor intentionally discriminated against him is of limited relevance in deciding whether a successor should be saddled with the burden of rectifying that illegal conduct.

The defendants in the instant case argue more persuasively that the policies of section 1981 do not support the application of

the successor doctrine to actions for employment discrimination brought under that statute. They argue that, unlike the NLRA and Title VII, section 1981 was intended to remedy individual, personal discrimination, not to regulate the terms and conditions of employment.

There is no doubt defendants are correct. The NLRA was specifically enacted to promote labor peace by regulating the collective activity of employees and their employer's response to it. Title VII was enacted to regulate the employer/employee relationship with regard to discrimination in employment. It was explicitly patterned after the NLRA. In particular, Title VII's remedial provisions were drawn directly from section 10(c) of the NLRA, 29 U.S.C. § 160(c). Under Title VII and the NLRA, adjudicators (the courts and the NLRB) were given substantial equitable powers to eradicate the present and future effects of discrimination. *See, e.g., United States v. Local 169, Carpenters,* 457 F.2d 210, 216 (7th Cir.1972).

The similar remedial provisions of Title VII and the NLRA have both been interpreted as prohibiting the award of punitive damages and compensatory damages for mental humiliation, pain, and suffering. *See Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938); *Walker v. Ford Motor Co.,* 684 F.2d 1355, 1363–64 & n. 14 (11th Cir.1982) and cases cited therein; *Harrington v. Vandalia Butler Board of Education,* 585 F.2d 192, 194–96 (6th Cir.1978), *cert. denied,* 441 U.S. 932, 99 S.Ct. 2053, 60 L.Ed.2d 660 (1979). *See also Johnson v. Railway Express,* 421 U.S. 454, 458, 95 S.Ct. 1716, 1719, 44 L.Ed.2d 295 (1975). This limitation is derived from the language of the statutes and their purposes of "restoring the economic status quo that would have obtained but for ... [the wrongful act]." *Golden State Bottling Co.,* 414 U.S. at 188, 94 S.Ct. at 427. Thus both the NLRA and Title VII are purely make-whole statutes designed to eradicate arbitrary and unfair treatment in employment.

Section 1981, on the other hand, is aimed at rectifying individual acts of discrimination against racial and ethnic minorities in a myriad of situations, and it clearly lacks a "make-whole" purpose. Section 1981's emphasis on eradicating direct personal discrimination and on making victims of such discrimination more than "whole" is mirrored by the fact that, in order to recover, a plaintiff must always prove that the defendant intentionally discriminated against him and by the remedies available to an injured plaintiff, i.e., punitive damages and compensatory damages for physical and mental humiliation and emotional harm. *See, e.g., Walker,* 684 F.2d at 1364 & n. 13.

■ Section 1981's emphasis on eradicating discrimination should not bar the application of successor liability to these types of cases. It is now settled that an employee may sue an employer under section 1981 for intentional discrimination in the terms and conditions of employment in much the same manner that he may sue for such discrimination under Title VII, although there are certain procedural differences between the two statutes. *Johnson,* 421 U.S. at 459–61, 95 S.Ct. at 1719–20. Section 1981 was not originally promulgated to regulate the workplace; however, it is now routinely invoked to circumscribe an employer's right to alter the terms and conditions of employment on the basis of an employee's race or national origin. In this manner, it is similar to the NLRA and Title VII which both seek to limit an employer's unfettered right to run his business in the interests of protecting an individual employee from arbitrary or discriminatory treatment, and, to a lesser extent, to clear the workplace of a "poisoned atmosphere" resulting from unremedied arbitrary employer action. The strong federal policy of Title VII of eradicating discrimination in the workplace and of making victims of employment discrimination whole for their losses is equally manifested in section 1981 when that statute is invoked to remedy workplace discrimination. Thus, although section 1981 was not originally promulgated to regulate the workplace, it now serves

that purpose when it is invoked to remedy employment discrimination.

But section 1981's lack of "make-whole" purpose, as manifested in the availability of punitive and some compensatory damages, cuts against the imposition of successor liability in section 1981 cases. The successor doctrine was designed to grant remedial relief—i.e., backpay, reinstatement, or seniority—to an employee who, solely because of a change in ownership, is unable to obtain similar relief from the predecessor. The purpose of the doctrine is to ensure that an employee is made "whole" when the predecessor has gone out of business. Punitive damages—which are generally imposed to punish the actual wrongdoer and to deter him from acting illegally again—or compensatory damages—which are imposed to provide relief for the collateral, not merely job-related, effects of discrimination—go far beyond this purpose. Although it can be argued that a successor could negotiate a reduction in price based on the claimed punitive and compensatory damages, the successor's ability to seek compensation for the undertaking of this risk is not the key to the successor doctrine. Rather, the key is to balance the interests of two innocent parties to achieve a clearly established national goal. That national goal is not better achieved by imposing punitive or compensatory damages on an innocent successor, who may never have discriminated against an employee, and who is thus unlikely to be deterred by the imposition of substantial penalties. *See* Parlee, *Vicarious Liability for Punitive Damages: Suggested Changes in Law Through Policy Analysis*, 68 Marq.L.Rev. 27, 47–52 (1984) (discussing under what circumstances vicarious liability for punitive damages should be imposed on corporations). In addition, the threat of an award of punitive or compensatory damages might unduly hamper business transactions, particularly because the amount of such damages is not easily computed before trial.

Nonetheless, we are not persuaded that the availability of these remedies under section 1981 should lead to a flat prohibition on successor liability in all section 1981 claims for employment discrimination. An injured employee should not be denied any remedy whatsoever merely because punitive or compensatory damages should not be imposed on a successor, particularly where nothing in congressional policy nor in the successor doctrine prohibits a court from limiting the remedies that can be imposed on a successor to those that make the victim whole for his losses. Indeed, "[t]he nature and extent of liability is subject to no formula, but must be determined upon the facts and circumstances of each case." *MacMillan*, 503 F.2d at 1092.

The defendants make one final argument against the use of the successor doctrine in employment discrimination cases. They argue that a victim of employment discrimination should not be granted any favored status over other unsecured creditors of the predecessor. True, in the bankruptcy laws, Congress has manifested its view that imposing losses on the unsecured creditors rather than the debtor is sometimes an acceptable and anticipated method of promoting business. *See generally 1 Norton Bankruptcy Law and Practice Par. 1,* § 1.02 at 3–5 (1983). But usually most unsecured creditors have already been compensated in the form of interest payments or higher prices for goods for the risk they took that the predecessor might not be able to repay them. Employees on the other hand are not compensated, *ex ante,* for the risk that their employer might discriminate against them. In addition, by enacting the antidiscrimination laws, Congress has already determined that employment discrimination should be eradicated and that there should never be a risk of employment discrimination. *See also* Note, *Tort Creditor Priority in the Secured Credit System: Asbestos Times, the Worst of Times*, 36 Stan.L.Rev. 1045, 1054–57, 1076–84 (1984) (arguing that tort victims are treated unfairly by secured credit system and ought to be elevated from unsecured to secured creditors).

One reason that the district court refused to extend the successor doctrine to

employment discrimination claims arising under section 1981 was that section 1981 is not limited to claims for employment discrimination. But we do not believe that it is either impracticable or impossible to limit—if it should be limited—the application of that doctrine to section 1981 claims for employment discrimination. Hence we believe that the successor doctrine can be applied in section 1981 actions for employment discrimination.

### III

Even though the successor doctrine can be applied to such claims, that does not necessarily mean that it should be applied to the instant case. The question is not whether successor liability can ever be imposed in an employment discrimination claim brought under section 1981, but when. *See Howard Johnson Co.,* 417 U.S. at 262 n. 9, 94 S.Ct. at 2243 n. 9. Each case must be determined on its own facts. *See MacMillan,* 503 F.2d at 1091.

In *MacMillan,* the Sixth Circuit set forth the factors to be considered in determining whether successor liability should be imposed in a particular case: (1) whether the successor company had notice of the charge or pending lawsuit prior to acquiring the business or assets of the predecessor; (2) the ability of the predecessor to provide relief; (3) whether there has been a substantial continuity of business operations; (4) whether the new employer uses the same plant; (5) whether he uses the same or substantially the same work force; (6) whether he uses the same or substantially the same supervisory personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether he uses the same machinery, equipment, and methods of production; and (9) whether he produces the same product. 503 F.2d at 1094. These are the same factors that have been applied to determine a successor's liability for a predecessor's violation of the NLRA. No one factor is controlling. A court must look to all of them and make its decision by balancing the interests of the injured employee and the national policy against discrimination.

Although these factors provide a useful starting point to analyze a successor's liability under section 1981, the substantial dissimilarities existing between the wrongs and remedies for violations of the NLRA and section 1981 require a somewhat different analytical framework.

■ The first two factors identified in *MacMillan* are critical to the imposition of successor liability. The successor doctrine is derived from equitable principles, and it would be grossly unfair, except in the most exceptional circumstances, to impose successor liability on an innocent purchaser when the predecessor is fully capable of providing relief or when the successor did not have the opportunity to protect itself by an indemnification clause in the acquisition agreement or a lower purchase price. *See, e.g., Bates,* 744 F.2d at 710–11; *Brown v. Evening News Assoc.,* 473 F.Supp. 1242, 1247 (E.D.Mich.1979); Barksdale, *Successor Liability Under the National Labor Relations Act and Title VII,* 54 Tex.L.Rev. 707, 730–34 (1976).

In our view, it is also relevant whether the predecessor could have provided any or all relief to the plaintiff prior to the transfer of assets. One of the underlying reasons for the successor doctrine is that an employee's statutory rights should not be vitiated by the mere fact of a sudden change in the employer's business. That employee should be able to enforce against a successor a claim or judgment that he could have successfully enforced against a predecessor. Unless extraordinary circumstances exist, an injured employee should not be made worse off by a change in the business. But neither should an injured employee be made better off. It can be argued that the national labor policy of eradicating employment discrimination is so overriding that a successor should be held liable even if the predecessor, had it remained in business, could not have provided the injured employee any relief. But *Burns International Security Services, Inc.* makes clear that the public has a sub-

stantial interest in the free transfer of capital and the reorganization of unprofitable businesses. Imposing liability on a successor when a predecessor could have provided no relief whatsoever is likely to severely inhibit the reorganization or transfer of assets of a failing business. A company on the verge of bankruptcy may find itself deluged with meretricious claims for employment discrimination as employees see the prospect of a deep-pocket to provide relief. The failing company might also have to dissipate substantial but desperately needed assets to defend against these lawsuits. In addition, that company will have difficulty selling its assets or business for a decedent price because successors will be unwilling to assume a business involved in substantial time-consuming and expensive litigation when the assets themselves lack substantial value. Thus, the predecessor's ability to provide some relief prior to the transfer is one factor to be considered in determining if successor liability should be imposed.

The other seven factors identified in *MacMillan* merely provide a foundation for analyzing the larger question of whether there is a continuity in operations and the work force of the successor and predecessor employers. This factor was first developed in actions to compel a successor to recognize and bargain with the incumbent union. *See Burns International Security Services, Inc.,* 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61; *John Wiley & Sons, Inc.,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898. It was relevant because the particular statutory right at issue was the employees' right to have the same union represent them. In *Golden State Bottling Co.* the continuity requirement was also relevant to the issue of whether the successor's employees might be unduly coerced in the exercise of their section 7 rights under the NLRA because of the unremedied unfair labor practices. 414 U.S. at 184, 94 S.Ct. at 425. In this respect, the type of unfair labor practice, the number of the predecessor's employees and the type of the remedy sought would all be relevant.

This rationale does not apply with equal force in the employment discrimination context. "The purpose of requiring a successor to remedy a predecessor's discrimination is not to leave the employees free to exercise discretionary rights but to protect the statutory purpose of nondiscrimination, which inheres to all employees as a matter of right." *Barksdale, supra,* 54 Tex.L. Rev. at 732. Thus, the amount of "continuity" required between the predecessor and the successor will vary depending upon the number of employees adversely affected by the predecessor's action and the remedy requested by the injured employee(s). In the instant case, for example, less continuity is required because the plaintiff is not seeking reinstatement, retroactive seniority, or placement on a preferential hiring list. Greater continuity would be required if the plaintiff were seeking more than monetary relief. And perhaps no amount of continuity would suffice to impose liability on a successor when a predecessor has discriminated against an entire class of individuals and the remedy is some sort of affirmative action decree or injunctive relief. *See, e.g., In re National Airlines, Inc.,* 700 F.2d 695, 699 (11th Cir.1983); *Barksdale, supra,* 54 Tex.L.Rev. at 732–33. *But see Golden State Bottling Co.,* 414 U.S. at 180, 94 S.Ct. at 423 (Fed.R.Civ.P. 65(d) no bar to imposing injunctive relief on nonparty successor); *Bates,* 744 F.2d at 710–11. In all of these cases, however, enough continuity between the predecessor and successor must exist so that it can fairly be inferred that the successor and predecessor reasonably expected that the successor would be bound. *See Howard Johnson Co.,* 417 U.S. at 257, 94 S.Ct. at 2240.

■ In the instant case, the plaintiff's allegations are for the most part a perfunctory recitation of the nine factors set forth by the *MacMillan* court. Plaintiff does allege with particularity that ESSI had notice of the pending lawsuit in that it attempted to settle the lawsuit one month prior to the sale of assets. We are not persuaded, however, by plaintiff's other argument that the successors had notice of

the lawsuit prior to the sale because they were listed as defendants on plaintiff's "Verified Petition for a Restraining Order." The mere expediency of listing a successor as a defendant on a pleading filed the day of a proposed sale does not join that successor as a party. Moreover, even if plaintiff is correct that ESSI and Kumar were joined as defendants that day, we do not believe that filing a lawsuit on the day a sale is to take place gives the successor the requisite notice of the plaintiff's claims. The basis of the notice requirement is that the successor has some time to negotiate a change in the purchase agreement to reflect the potential liability of a lawsuit; a pleading filed at the Eleventh Hour naming the successor as a defendant clearly gives a successor little if no time to reconsider a sale that for all intents and purposes has been completed. This does not mean, of course, that the plaintiff has the burden of providing notice to the successor. Normally, the burden would be on the successor to find out from the predecessor all outstanding potential and actual liabilities. But a successor who has exercised due diligence and failed to uncover evidence of the plaintiff's lawsuit will not be found to have notice when a pleading listing it as a defendant is filed the very day the transaction is to take place.

The plaintiff also conclusorily alleges that because Electronic has transferred all its assets to other parties, the original defendants will be unable to provide him any relief. He does not allege, however, that the original defendants are not still in business or do not have funds with which to pay him. The plaintiff argues that we can infer from the "Notice to Creditors" that the sale of assets was for inadequate consideration because the amount of new consideration was $855,000 less than the total amount of secured and unsecured debts. We can further infer from the fact that the sale was for inadequate consideration that the original defendants have no funds to compensate him. Even if we accept plaintiff's argument that the sale was for inadequate consideration, the rest of plaintiff's argument fails for two reasons. First,

none of these facts are alleged in the complaint, nor is the "Notice to Creditors" even attached to the Second Amended Complaint. The sufficiency of a complaint is only based on the well-pleaded facts contained in the complaint, not those extraneous to it that are later raised by the plaintiff to bolster the sufficiency of the complaint. Second, inadequacy of consideration may imply some kind of sham transaction, which has not been alleged here, but it does not necessarily imply that the original defendants no longer have any assets with which to satisfy plaintiff's claim. Plaintiff admits that new consideration was paid to the original defendants, and there are no allegations that this will be insufficient or unavailable to pay plaintiff's claim. Thus, plaintiff does nothing more than state a conclusion with no facts to support it.

Plaintiff also does not allege that the original defendants would have been able to grant him relief had Electronic not transferred its assets to ESSI. Indeed, the facts of this case belie this conclusion. The purchaser and seller gave a statutory notice to creditors that is normally only required when the transferor is already or may be insolvent. See Ill.Rev.Stat. ch. 26 Art. 6, § 6–106, Illinois Code Comment (1963). This notice gave advance warning of the sale to all creditors so that they could have enjoined the sale or sought to attach the transferred assets to satisfy their claims. Plaintiff voluntarily withdrew his motion to enjoin the sale, suggesting that he believed that he might be better off if the sale took place or that he could not show a conveyance for inadequate consideration.

Finally, plaintiff does not allege with any particularity facts regarding the "continuity of the enterprise" although this failure is less serious, but not entirely unobjectionable, given that he is only claiming monetary relief for the predecessor's discrimination against him. See supra at 751. We are not told how many of the predecessor's employees were hired by the successor, which of the predecessor's supervisory personnel were hired by the successor, or

what jobs they may be in fact performing for the successor.

■ In most respects, then, plaintiff's allegations are grossly deficient. Nonetheless, in light of the general policy favoring liberal construction of pleadings and against deciding the merits of claims solely on the basis of the pleadings, 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1357 at 599 (1969), and the fact that this case presents a question of first impression, we believe that the plaintiff should be afforded an opportunity on remand to amend the complaint to adequately state a claim for successor liability. His allegations in the second amended complaint sufficiently put defendant ESSI on notice of the claims against it, and the defendant has not seriously argued that Musikiwamba has failed to adequately plead sufficient facts to withstand a motion to dismiss. Further, discovery on remand may reveal enough facts favorable to Musikiwamba to permit him to continue to prosecute his claims against the successor. We therefore hold that Musikiwamba can assert a claim against defendant ESSI for Electronic's alleged violation of section 1981 and that he should be permitted on remand to amend his complaint.

### IV

■ We agree with defendants that the federal claims against Kumar were properly dismissed. Musikiwamba's sole allegations against Kumar are that (1) Kumar incorporated ESSI, (2) Kumar is the chief executive officer and a major shareholder of ESSI, and (3) Kumar knew of the pending lawsuit prior to the transfer of assets. Musikiwamba argues that these facts make Kumar a "successor." The successor, however, is the party that actually purchases the assets of the predecessor and continues the predecessor's business. In this case, Musikiwamba admits that it was the corporation, ESSI, and not Kumar, individually, who purchased the assets of Electronic and allegedly continued to operate Electronic; hence, only ESSI, and not Kumar, would succeed to any obligations of Electronic

under the doctrine of successor liability. Kumar's liability, if there is any, can only be derivative of ESSI's successor liability. The district judge implicitly recognized this fact when she dismissed the federal claims against Kumar because Kumar "... is not alleged to have been an active participant in the alleged discrimination against plaintiff." District Court Memorandum and Order at 5.

■ Plaintiff appears to argue that Kumar does have this "derivative liability" because Kumar is an officer, shareholder, and incorporator of ESSI. We reject this argument. We agree with the Fourth Circuit that personal liability cannot be imposed on a corporate official for the corporation's violation of section 1981 when that official is not alleged to have participated in the actual discrimination against the plaintiff. *See Tillman v. Wheaton-Haven Recreation Ass'n, Inc.,* 517 F.2d 1141, 1144 (4th Cir.1975). *See also Leslie v. Philadelphia 1976 Bicentennial Corporation,* 332 F.Supp. 83, 93 (E.D.Pa.1971); Note, *Personal Liability of Corporate Officials Under Title VII,* 3 J. Suffolk Acad.L. 53–66 (1983). General corporation law is clear that personal liability for a corporation's debts cannot be imposed on a person merely because he is an officer, shareholder, and incorporator of that corporation. Knepper, *Liability of Corporate Officers and Directors* 168–69 (1978); 3 Fletcher, *Cyclopedia of the Law of Private Corporations* § 1118 (Rev. ed. 1975) (Supp.1984). This is the law of Illinois as well. *National Acceptance Co. v. Pintura,* 94 Ill. App.3d 703, 50 Ill.Dec. 120, 418 N.E.2d 1114, 1117 (1981). Personal liability is imposed only when the officer is alleged to have taken part in the *illegal act* initially giving rise to the corporation's liability. *Tillman,* 517 F.2d at 1144; 3 Fletcher, *supra,* at §§ 1135, 1137.

■ In our view, this limited liability of corporate officials for the wrongdoing of their own corporation should also apply to officers of a successor corporation. To pierce the successor's corporate veil in circumstances in which the predecessor's cor-

porate veil would not be pierced would create a manifestly unjust extension of corporate law that is not warranted by the equitable doctrine of successor liability. The successor doctrine, in effect, penalizes an innocent party because that party by virtue of its own actions is the most efficient cost-avoider. To reach behind the direct successor to penalize yet another third innocent party who probably does not have the financial resources of the direct successor simply stretches the equitable foundations of successor liability too far. Thus, we hold that an officer of a successor incurs no personal liability for a predecessor's employment discrimination unless that officer personally discriminated against the plaintiff, somehow aided the predecessor to discriminate against the plaintiff, or colluded with the officers of the predecessor in a "sham transaction" designed to defraud creditors. In the instant case, there are no allegations that Kumar ever personally discriminated against Musikiwamba or that this was a sham transaction.

Plaintiff makes one final argument, however, in support of his federal claims against Kumar. He asserts that because Kumar personally incorporated ESSI, personally negotiated for the transfer of assets, and personally continued to act as an officer of the business after the transfer of assets, he participated in the acts which gave rise to ESSI's potential successor liability and hence he can be liable too. But all of Kumar's acts were legal and merely a part of his job as a corporate officer. They were not part of the discriminatory acts against the plaintiff nor did they perpetuate the illegal discrimination. As a result, they cannot give rise to any personal liability on the part of Kumar for the predecessor's alleged discrimination. Thus, we hold that the federal claims against Kumar were properly dismissed.

V

The defendants argue that even if we sustain the federal claims against them that we should dismiss the state law claims against them because Musikiwamba has failed to state a claim under Illinois law. The defendants also advanced this argument before the district court, but the judge did not resolve the issue. Having dismissed the federal claims against Kumar and ESSI, she dismissed the state law claims because "[t]he Court of Appeals for this Circuit may not have closed the door finally on the concept of pendent party jurisdiction, but the court perceives no reason why pendent party jurisdiction would be especially appropriate in this case." District Court Memorandum Opinion and Order at 5. Given that we have reinstated the federal claims against ESSI, and that therefore the district judge properly could have exercised jurisdiction over the state law claims, we believe that the proper route for us to follow is to remand this case to the district judge for a determination of the state law issue with respect to defendant ESSI.

▮ We believe, however, that the district judge properly exercised her discretion in dismissing the state law claims against Kumar. Although this court has sustained the exercise of pendent party jurisdiction, see Moore v. The Marketplace Restaurant, Inc., 754 F.2d 1336, 1337, 1359–61 (7th Cir.1985) (separate opinion by Posner, J.) and cases cited therein, the exercise of such jurisdiction is within the sound discretion of the district court. See United Mine Workers of America v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1976). We do not believe that dismissing the pendent party claims against Kumar was an abuse of discretion where those claims are essentially an attempt to slip a section 1981 claim in through the back door, where the policies of the successor doctrine do not extend to imposing liability on an officer of the successor for a predecessor's section 1981 violation, see Aldinger v. Howard, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976); Moore, 754 F.2d at 1360, and where Kumar's liability under state law for the predecessor's state law violations is questionable at best because there have been no

allegations that Kumar personally engaged in or promoted any of the illegal acts against Musikiwamba. *See* discussion *supra* at 753–754.

In sum, we hold that the successor doctrine can be applied to claims for employment discrimination brought pursuant to section 1981. On remand, plaintiff should be given the opportunity to amend his complaint to properly state a claim under that doctrine. However, absent allegations that the officer of the successor participated in the discrimination against the plaintiff or that the officer is colluding in a sham transaction, that officer has no liability to the plaintiff for the predecessor's alleged violation of section 1981. Hence the federal claims against Kumar were properly dismissed as were the pendent state law claims. The dismissal of the state law claims against ESSI for failure to state a claim under Illinois law may be considered by the district judge on remand.

Circuit Rule 18 shall not apply. Each party is to bear its own costs.

ESCHBACH, Circuit Judge, concurring.

In this groundbreaking case we today become the first court of appeals to recognize that the doctrine of successor liability can apply in a proper case in which the plaintiff seeks relief under 42 U.S.C. § 1981 for employment discrimination. While I agree with the result and with much of the Court's reasoning, I write separately to emphasize my understanding of the narrowness of our holding, the conditions we attach to the imposition of successor liability under § 1981, and the limitations on the relief that may be obtained.

As I understand it, our principal holding is narrow indeed, amounting only to the following: Under certain conditions it is possible for an employee (or former employee) to state a claim for which relief may be granted under 42 U.S.C. § 1981 for employment discrimination against a company that succeeds to the business of his (former) employer, when the employee alleges that the predecessor and not the successor did the acts charged as discriminatory.

I understand the Court to supplement this holding by attaching at least the following conditions to successor liability and to impose on the plaintiff the burden of pleading and proving them:

(a) The predecessor must be liable to the plaintiff for employment discrimination under § 1981. The requirement of an intentional act of discrimination is not relaxed, even though the successor need not have committed such an act.

(b) The successor must have had actual or constructive notice of the claim or charge of employment discrimination against the predecessor sufficiently in advance of the closing of the transaction to enable the successor to negotiate compensation for its exposure to the liability the plaintiff seeks to impose.

(c) It must appear from the complaint that the predecessor is unable to provide the plaintiff with the relief he seeks from the successor.

(d) But for the succession, the predecessor would have been able to provide the plaintiff with the relief he seeks from the successor.

(e) There must be sufficient continuity between the business of the predecessor and the business of the successor to support the type of relief sought.

While this list does not purport to be an exhaustive statement of the elements of a claim for successor liability under § 1981 in employment discrimination cases, I agree with the Court that these five conditions are properly imposed as necessary ingredients of such a claim.

Finally, I understand the Court to hold that the relief obtainable from the successor is confined to the "make-whole" remedies available under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; the successor may not be assessed additional compensatory or punitive damages. I agree that this is a proper restriction of the remedies, for the reasons the Court gives.