**The NINTH AVENUE REMEDIAL GROUP, et al., Plaintiffs,**

v.

**ALLIS–CHALMERS CORPORATION, et al., Defendants.**

**No. 2:94–CV–331–RL.**

United States District Court,
N.D. Indiana,
Hammond Division.

April 19, 1996.

Harold Abrahamson, Abrahamson Reed and Adley, Hammond, IN, Joseph V. Karaganis, A. Bruce White, Mark D. Erzen, John W. Kalich, Karaganis and Wyhite, H. Alfred Ryan, Chicago, IL, for plaintiffs.

Ronald G. Hayden, Russell R. Eggert, Mayer Brown and Platt, Chicago, IL, Robyn Ice Sosebee, Nill V. Toulme, R. Wayne Thorpe, Alston & Bird, Atlanta, GA, Jane B. Amdahl, Joseph S. Van Bokkelen, Goodman, Ball and VanBokkelen, Highland, IN, for defendants.

### *ORDER*

LOZANO, District Judge.

This matter is before the Court on Defendant Clark Refining & Marketing Inc.'s Motion to Dismiss or, Alternatively, for Summary Judgment, filed February 6, 1995; Defendant Clark Refining & Marketing, Inc.'s Motion to Dismiss or, Alternatively, for Summary Judgment Against Crossclaim of Defendant Barber–Greene Company, filed June 14, 1995; and Defendant Clark Refining & Marketing, Inc.'s Motion to Dismiss or, Alternatively, for Summary Judgment Against Crossclaim of Defendant Commander Packaging Corporation, filed August 1, 1995. Plaintiffs, the Ninth Avenue Remedial Group and its members (collectively "Ninth Avenue Group"), and Defendant/Cross–Plaintiff Barber–Greene Compa-

ny filed responses to the motions. For the reasons set forth below, the motions are **DENIED**.

*BACKGROUND*

This case concerns the Ninth Avenue Dump Superfund site in Gary, Indiana. The site, which operated as a chemical and industrial waste disposal facility during the 1970's, has been contaminated by releases or threatened releases of the hazardous substances dumped there. Plaintiff, Ninth Avenue Remedial Group, has conducted and is conducting cleanup activities at the Ninth Avenue site under the approval of the Environmental Protection Agency ("EPA").

The Ninth Avenue Remedial Group is an unincorporated voluntary association of corporations which its members created to take collective actions relating to the site. All of its members, who are also Plaintiffs in this action, have been named in orders issued by the EPA instructing them to undertake the cleanup of the site. The Group and its members now sue several Defendants under the Comprehensive Environmental Response Compensation and Liability Act of 1980 as amended ("CERCLA"), 42 U.S.C. §§ 9607 and 9613, for contributions to the cleanup costs which amount to over $20 million.

In their complaint, Plaintiffs allege that Defendants, including Clark Refining & Marketing, Inc. ("Clark"), are "covered persons" as defined by CERCLA, 42 U.S.C. § 9607(a)(3), and that EPA has identified many of the Defendants as potentially responsible parties ("PRP's") within the meaning of the Act in one or more of its orders relating to the site. Specifically, Plaintiffs allege that each Defendant "by contract, agreement or otherwise, arranged (or is the successor in interest of an entity that arranged) for the disposal or treatment at the Site, or arranged with a transporter for the disposal or treatment at the Site of hazardous substances." Compl. ¶ 8. *See* CERCLA, 42 U.S.C. § 9607(a)(3). The Ninth Avenue Group claims that Defendants are strictly, jointly and severally liable for all past and future response costs associated with the site.

According to Clark, Apex Oil Company ("Apex") purchased Clark Oil & Refining

Corporation ("Old Clark") in 1981. In December of 1987, Apex and its subsidiaries, including Old Clark, sought protection from creditors under Chapter 11 of the Bankruptcy Code. After a period of negotiations, the Horsham Corporation, through its subsidiary, AOC Acquisition Corporation, agreed to purchase certain assets of Apex and its subsidiaries, including many of Old Clark's facilities. AOC Acquisition later changed its name to Clark Refining & Marketing, Inc., now a Defendant in this action.

The asset purchase agreement between Apex and AOC/Clark provided that Clark would not assume any liability for claims arising from the operation of Old Clark's facilities prior to the sale. In particular, the agreement excluded assumption of liability for environmental claims:

> [AOC/Clark] shall assume no liabilities, claims, commitments or obligations of any Seller, disclosed or undisclosed, except as expressly assumed by the purchaser pursuant to [the purchase agreement]. [Apex and its subsidiaries] shall remain liable, except as may be disallowed or discharged in the Bankruptcy Case or otherwise affected by any plan or plans of reorganization confirmed in the Bankruptcy Case, for each and every obligation or liability of such Seller, whether or not related to the Purchased Assets or Seller's Business Sold other than the assumed liabilities ... including ... (ii) any liability (other than Assumed Liabilities) for any and all claims, demands, causes of actions, proceedings, and/or suits, damages, losses (of any kind, including actual, compensatory and punitive), including the cost of correcting or compensation for injuries of any kind, including those to persons, property, the environment, or natural resources[ ], and for fines, interest, penalties, losses, and other costs of any kind, including court costs, engineering costs, and attorneys fees[ ], under any Applicable Law ("Environmental Claims"), relating to protection of health, safety or the environment or imposing liability or standards of conduct concerning any hazardous or non-hazardous material, waste or substance (including any Environmental Law) which

are commenced against or are incurred by Purchaser and arise out of or relate to ownership, business, occupation, use, maintenance or operation of the Purchased Assets of Seller's Business Sold prior to the Closing Date by any Seller or any Subsidiary or Affiliate of any Seller.

(Defendant's Exhibit 3—Asset Purchase Agreement § 2.3)

In November 1988 the bankruptcy court approved the agreement for the sale of assets to AOC/Clark "free and clear of all liens, claims, taxes, encumbrances, obligations, contractual commitments, and interests," pursuant to 7 U.S.C. § 363(f). *In re Apex Oil Co.,* 92 B.R. 847 (Bankr.E.D.Mo.1988) (order approving sale of assets to AOC/Clark). In addition, the order provided that "the rights of creditors and other parties in interest asserting a lien or other interest against the Purchased Assets shall attach to the Purchase Price; ... liens and interests against the Purchased Assets shall be of no further force and effect." *Id.* Two years later, in August 1990, the bankruptcy court entered an order confirming the Chapter 11 reorganization plan for Apex and its subsidiaries. The order discharged the debtors of any claims arising prior to the confirmation order. *In re Apex Oil Co.,* 118 B.R. 683, 713 (Bankr.E.D.Mo.1990).

*DISCUSSION*

*Standard of Review*

■ When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) the court must assume the truth of plaintiff's well-pleaded allegations and make all possible inferences in plaintiff's favor. *Albright v. Oliver,* 510 U.S. 266, ——, 114 S.Ct. 807, 810, 127 L.Ed.2d 114 (1994); *Prince v. Rescorp Realty,* 940 F.2d 1104, 1106 (7th Cir.1991); *Janowsky v. U.S.,* 913 F.2d 393, 395 (7th Cir.1990). The court should not dismiss the complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Prince,* 940 F.2d at 1106.

■ If the court considers matters outside the pleadings when deciding a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, the court should treat the motion as one for summary judgment. Fed.R.Civ.P. 12(b). As Clark explains in its reply, however, the Court could consider some of the documents introduced by Clark with the motion without converting the motion to dismiss into a motion for summary judgment. Courts can take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment. *Henson v. C.S.C. Credit Services,* 29 F.3d 280, 284 (7th Cir.1994). In *United States v. Wood,* 925 F.2d 1580, 1582 (7th Cir.1991), for example, the court considered the case file of prior bankruptcy proceedings involving one of the parties. The language of the cases cited above and others cited by Defendant do not mandate the courts to consider matters of public records when deciding motions to dismiss; the cases simply state that the courts *may* consider the documents if appropriate.

■ Most of the documents submitted by Clark are orders from the Bankruptcy Court of the Eastern District of Missouri where Apex and Old Clark filed for bankruptcy. Clearly, this Court could consider the previous orders of another federal court when deciding a motion to dismiss. Clark also included several self-authenticated certificates of incorporation which are official public records. However, Clark includes other documents, such as an affidavit and an asset purchase agreement, which the Court will consider only under summary judgment. Because not all the documents submitted by Defendant qualify for judicial notice, the Court only will look at the pleadings when deciding the motion to dismiss. The Court will apply the summary judgment standard when considering the documents submitted by Defendant.

■ When deciding a motion to dismiss under summary judgment standards, granting summary judgment is proper only if the movant demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Nebraska v. Wyoming and Colorado,* 507 U.S. 584, 113 S.Ct. 1689, 1694, 123 L.Ed.2d 317 (1993); *Celotex Corp. v. Catrett,* 477 U.S.

317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In deciding the motion, a court must read all facts in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14; *Nucor Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir.1994).

■ If, through the documents included with the motion, the moving party demonstrates an absence of a genuine issue of material fact, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Becker v. Tenenbaum–Hill Assoc., Inc.*, 914 F.2d 107, 110 (7th Cir.1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir.1989). "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

■ Rule 12(b)(6) requires that the Court give the parties a reasonable opportunity to present all pertinent materials before treating a motion to dismiss as one for summary judgment. However, Plaintiffs and Cross–Plaintiffs (collectively "Plaintiffs") cannot claim surprise if the Court applies the summary judgment standard when considering the motions because the movant explicitly filed the motions in the alternative as summary judgment motions. In any case, Plaintiffs are not prejudiced by the lack of explicit notice from the Court because the Court has decided to deny the motions.

*Issues*

Essentially Clark argues that as a matter of law it cannot be liable for the response costs incurred in cleaning the Ninth Avenue site for two reasons. First, Clark argues that it is a different company from the company that disposed of the hazardous materials at the Ninth Avenue site and that it did not assume Old Clark's liabilities when it purchased the assets from the Old Clark at an arm's length transaction. Clark therefore alleges that it is a distinct asset purchaser to which successor liability does not apply. Clark adds that successor liability cannot apply in this case because Old Clark, the predecessor company, is a viable company that can satisfy Plaintiffs' claims.

Second, Clark claims that when it purchased the assets from Old Clark during the bankruptcy proceedings, the bankruptcy court approved an order clearing the assets sold from all claims and obligations, including those arising from CERCLA liability. Clark concludes that any claims associated with the assets were discharged because of the free and clear sale made pursuant to Bankruptcy Code and approved by the bankruptcy court.

## A. SUCCESSOR LIABILITY

■ The general rule is that a purchaser of assets does not acquire the liabilities of the seller. *Chicago Truck Drivers, Helpers and Warehouse Workers Union Pension Fund v. Tasemkin, Inc.*, 59 F.3d 48 (7th Cir.1995). There are four exceptions to this general rule. They allow successor liability if: (1) the purchaser explicitly or implicitly agrees to assume liability; (2) the transaction amounts to a de facto merger or consolidation; (3) the purchasing corporation is merely a continuation of the seller; or (4) the parties negotiated the transaction fraudulently to escape the liability. *U.S. v. Mexico Feed & Seed Co., Inc.*, 980 F.2d 478, 487 (8th Cir.1992); *U.S. v. Carolina Transformer Co.*, 978 F.2d 832, 838 (4th Cir.1992); *Louisiana–Pacific Corp. v. Asarco, Inc.*, 909 F.2d 1260, 1263 (9th Cir.1990); *Hunt's Generator Committee v. Babcock & Wilcox Co.*, 863 F.Supp. 879, 882 (E.D.Wis.1994); *Allied Corp. v. Acme Solvents Reclaiming, Inc.*, 812 F.Supp. 124, 127 (N.D.Ill.1993). These four exceptions describe corporate reorganizations that ultimately leave the real ownership unchanged. *Tasemkin*, 59 F.3d at 49.

■ The Seventh Circuit has not reviewed the issue of successor liability under CERCLA, but other circuits have concluded that successor liability does apply to CERCLA cases. *See Mexico Feed*, 980 F.2d 478

(8th Cir.1992); *Carolina Transformer,* 978 F.2d 832 (4th Cir.1992); *Anspec Co., Inc. v. Johnson Controls, Inc.,* 922 F.2d 1240 (6th Cir.1991); *Louisiana–Pacific,* 909 F.2d 1260 (9th Cir.1990); *Smith Land & Improvement Corp. v. Celotex Corp.,* 851 F.2d 86 (3d Cir. 1988), *cert. denied,* 488 U.S. 1029, 109 S.Ct. 837, 102 L.Ed.2d 969 (1989). The Third Circuit was the first to apply successor liability in a CERCLA case where an asbestos manufacturer had merged into another company, the successor. *See Smith Land,* 851 F.2d 86; *see also Anspec Co.,* 922 F.2d 1240 (applying CERCLA successor liability to a corporate merger). Although *Smith Land* involved a merger, that case provided the basis for the decisions of other circuit courts that have applied successor liability in the context of asset purchases.

In *Louisiana–Pacific Corp.,* 909 F.2d 1260, the Ninth Circuit held that Congress intended successor liability to apply to CERCLA and it expanded the analysis of *Smith Land* to apply successor liability in the context of an asset purchase. *Id.* at 1262–63. In that action, plaintiff sued for the recovery of cleanup costs from the successor which had purchased the assets of a company that marketed waste. The Ninth Circuit concluded that asset purchasers were liable as successors if they fell under one of the four exceptions listed above.

The Fourth Circuit in *Carolina Transformer,* 978 F.2d 832, and the Eighth Circuit in *Mexico Feed,* 980 F.2d 478, agreed that the successor liability doctrine applies to CERCLA cases involving asset purchases. Several district courts in this Circuit have followed the trend in other circuits, finding that an asset purchaser can be liable under CERCLA due to successor liability. *See Hunt's Generator Committee,* 863 F.Supp. 879; *Allied Corp.,* 812 F.Supp. 124.

These courts found support for their decisions both in the language and in the purpose of the statute. Section 9601(21) of CERCLA, 42 U.S.C., defines "persons" who might be liable under the Act as provided in section 9607. "Persons" include, among others, firms, corporations, joint ventures, partnerships, associations and commercial entities. Although CERCLA does not define these terms, section 5 of title 1 of the United States Code, which applies to the construction of all federal statutes, states that words like "company" or "association," when used in reference to a corporation, include the successors and assigns of such company. Therefore, several courts have concluded that, when it listed companies or corporations as possibly liable persons under CERCLA, Congress must have intended to include their successors. *Mexico Feed,* 980 F.2d at 486; *Anspec Co.,* 922 F.2d at 1247.

The courts also have found that such construction of the statutory language was consistent with the legislative purpose of the Act of imposing the cost of the harm created by hazardous waste on those responsible for the production and disposal of the waste. *Anspec Co.,* 922 F.2d at 1247; *see also Smith Land & Improvement,* 851 F.2d at 91–92. "Even in cases of good faith, a bona-fide successor reaps the economic benefits of its predecessor's use of hazardous disposal methods, and, as the recipient of the benefits, is also responsible for the costs of those benefits." *Mexico Feed,* 980 F.2d at 487.

Most of the cases cited above have applied federal common law when applying successor liability under CERCLA. *See Mexico Feed,* 980 F.2d at 487 n. 9; *Carolina Transformer,* 978 F.2d at 837–39; *Louisiana–Pacific,* 909 F.2d at 1263; *Hunt's Generator Committee,* 863 F.Supp. at 882; *see also Smith Land & Improvement,* 851 F.2d at 91. Only the Sixth Circuit has held that state law should determine successor liability. *See Anspec Co.,* 922 F.2d at 1248.

This Court finds the opinions of the cases cited above persuasive and will apply the successor liability doctrine in the determination of this case. Because most courts apply federal common law to the successor liability questions under CERCLA, and because the Seventh Circuit has applied federal common law when considering successor liability under other federal statutes, *see, e.g., Tasemkin,* 59 F.3d at 49; *EEOC v. G–K–G, Inc.,* 39 F.3d 740, 748 (7th Cir.1994), this Court will apply federal common law to the issue of successor liability in this case.

Applying the traditional successorship doctrine to the case at hand, the only successorship exception that appears relevant from the motions and responses before the Court is the third exception for mere continuity of business enterprise. In other words, Clark would be liable for claims against Old Clark if Clark is merely a continuity of Old Clark's business. Under the traditional application of the mere continuity exception, a corporate successor is the continuation of the predecessor if only one corporation remains after the transfer of assets and there is identity of stockholders and directors between the two corporations. *Carolina Transformer Co.*, 978 F.2d at 838; *Kleen Laundry & Dry Cleaning Services v. Total Waste Management Corp.*, 817 F.Supp. 225, 231 (N.D.N.H.1993); *Allied Corp.*, 812 F.Supp. at 129. This exception encompasses the situation where one corporation sells its assets to another with the same people owning both corporations. *City Environmental, Inc. v. U.S. Chemical Co.*, 814 F.Supp. 624, 635 (E.D.Mich.1993).

Some courts have adopted a similar but broader test for business continuity, called the "substantial continuity" or "continuity of enterprise" test, to determine successor liability under CERCLA. *See Mexico Feed*, 980 F.2d at 487; *Kleen Laundry & Dry Cleaning*, 817 F.Supp. at 231; *Hunt's Generator Committee*, 863 F.Supp. at 883. This more expansive test of successorship has been applied also in cases such as labor law and product liability cases where "the public policy vindicated by recovery from the implicated assets is paramount to that supported by the traditional rules delimiting successor liability." *Mexico Feed*, 980 F.2d at 487. The courts that have applied the substantial continuity test have concluded that environmental cleanup is one of those situations in which public policy dictates that the traditional notions of successor liability should be broadened. *Hunt's Generator Committee*, 863 F.Supp. at 883; *see also Mexico Feed*, 980 F.2d at 478.

The substantial continuity test does consider identity of stock, stockholders and corporate officers, but those factors are not determinative. *Mexico Feed*, 980 F.2d at

488 n. 10. Under the substantial continuity test, the court considers, in addition, a series of factors to determine whether one corporation is the successor of another: (1) retention of the same employees; (2) retention of the same supervisory personnel; (3) retention of the same production facilities in the same location; (4) production of the same product; (5) retention of the same name; (6) continuity of assets; (7) continuity of general business operations; and (8) whether the successor holds itself out as a continuation of the previous enterprise. *Mexico Feed*, 980 F.2d at 488 n. 10; *Carolina Transformer Co.*, 978 F.2d at 838; *Hunt's Generator*, 863 F.Supp. at 883; *Kleen Laundry & Dry Cleaning*, 817 F.Supp. at 231. The court should also consider whether "the transfer to the new corporation was part of an effort to continue the business of the former corporation yet avoid its existing or potential state or federal environmental liability." *Carolina Transformer Co.*, 978 F.2d at 838; *see also Hunt's Generator Committee*, 863 F.Supp. at 883.

The Ninth Circuit was the first that considered whether to apply the substantial continuity test to determine successor liability under CERCLA. *See Louisiana–Pacific Corp.*, 909 F.2d 1260. In that case, the court refused to apply the more expansive test because the successor did not have notice of the potential CERCLA liability and, more importantly accordingly to the Ninth Circuit, because the successor did not continue the business enterprise of its predecessor.

The Fourth Circuit applied the broader substantial continuity test and found successor liability in *Carolina Transformer*, 978 F.2d 832. There, the successor company had been incorporated in the midst of the predecessor's growing environmental problems and the assets had been sold to the successor for a price under their fair value. *Id.* at 838–39. The same family owned the asset seller and purchaser (the father owned the predecessor, and the son and daughter owned the successor), and several directors had sat on the board of both companies. Other factors that the court noted were that the owners of the successor had been officers in the predecessor, most of the management remained the same, the product was practically the

same, and the owner of the old company, while not in an official position in the successor company, was involved with the successor company and even could write corporate checks on its behalf. *Id.* at 839.

The Eighth Circuit applied the test in *Mexico Feed,* 980 F.2d 478, but it stated that it would not find a *bona fide* purchaser liable unless the purchaser knew of the potential liability. *Id.* at 488. "The factor of knowledge or notice ensure[s] that 'substantial continuation' corporations ... will be able to protect themselves through purchase price adjustments or satisfactory indemnity provisions." *Id.* at 488. In that case, the court found that the successor had no knowledge of the liability and no ties to the seller corporation. *Id.* at 489. Even though the successor retained the same employees, delivered the same service to the same clients, and kept the name of the predecessor for several years, the court concluded that there was no successor liability under the broader substantial continuity test, because of the lack of notice or ties between the successor and predecessor corporations. *Id.* at 489–90. The court also concluded that there was no successor liability under the more traditional mere continuity test because there was no identity of directors and shareholders. *Id.* at 487.

In *Hunt's Generator Committee,* 863 F.Supp. 879, the Wisconsin court discussed both the traditional mere continuation test and the substantial continuity test. While the court did not exclude the possibility that liability under substantial continuity could be established without actual knowledge of the potential claim, the court considered that factor to be very significant. *Id.* at 884. Finally, the court held that the successor was not liable despite the fact that it continued the same business with the same employees to the same clients out of the same location and with some of the original corporation officers, because the ownership of the companies did not overlap, the successor had no knowledge of the potential liability, and the predecessor,

who had been a waste generator, had not dumped in the CERCLA site for four years before the asset sale. *See also Allied Corp.,* 812 F.Supp. 124, 129 (where the Northern District of Illinois refused to apply the substantial continuity test because the successor in that case had no knowledge of potential liability); *U.S. v. Atlas Minerals & Chemicals, Inc.,* 824 F.Supp. 46 (E.D.Pa.1993) (refusing to apply the substantial continuity test when the successor did not know of or was not responsible for the dumping of the waste).[1] *But see U.S. v. Peirce,* No. 83 CV 1623 (1995) WL 356017, at *3 (N.D.N.Y. February 21, 1995) (holding that the substantial continuity test applies to asset purchase cases irrespective of the lack of knowledge or ties between the corporations; these elements are significant but not determinative); *Kleen Laundry & Dry Cleaning Services,* 867 F.Supp. 1136, 1144 (finding that a successor can be held liable under CERCLA even if it did not know that the predecessor had engaged in conduct that could lead to CERCLA liability).

While some courts have rejected outright the substantial continuity test for CERCLA cases, *see, e.g., Sylvester Bros. Dev. Co. v. Burlington N.R.R.,* 772 F.Supp. 443, 449 (D.Minn.1990), several opinions suggest that the Seventh Circuit would use the substantial continuity test when applying successor liability under federal common law. These opinions indicate that the Seventh Circuit would require knowledge of potential CERCLA liability by the purchaser before holding it liable as the successor under the substantial continuity exception. *See Tasemkin,* 59 F.3d 48; *G–K–G,* 39 F.3d 740.

The Seventh Circuit has used the substantial continuity exception when determining successor liability under federal common law in cases involving employment discrimination and union pension funds. Expanding the traditional exceptions of successor liability, the Seventh Circuit stated that when federal rights or federal policies are at stake, the law

---

1. Michigan courts, which, by order of the Sixth Circuit, must apply state law when determining successor liability under CERCLA, also have required either knowledge of liability by the asset purchaser or a tie between the selling and the purchasing corporation before applying the substantial continuity test. *See U.S. v. Vermont American Corp.,* 871 F.Supp. 318 (W.D.Mich. 1994); *City Environmental, Inc. v. U.S. Chemical Co.,* 814 F.Supp. 624 (E.D.Mich.1993).

allows suits against genuinely distinct purchasers of assets "if (1) the successor had notice of the claim before the acquisition; and (2) there was 'substantial continuity in the operation of the business before and after the sale.'" *Tasemkin*, 59 F.3d at 49; *G–K–G*, 39 F.3d at 747–48.

Both in *Tasemkin* and *G–K–G* the appellate court reversed orders granting dismissal because it found that the plaintiffs had alleged facts which could satisfy the test. In *Tasemkin*, where the plaintiff sued the successor for contributions due to a union pension fund, the new company was owned by a relative of the prior owner, and the president of the new company had been the registered agent of the predecessor. These facts suggested both notice and continuity. The court also noted that the new company operated the same business out of the same location employing the same staff. *Tasemkin*, 59 F.3d at 49.

In *G–K–G*, the plaintiff amended his complaint to add the successor which purchased the assets after the plaintiff had filed his employment discrimination suit against the predecessor. The court found notice because the president of the purchaser had been notified of the lawsuit prior to the purchase. The court also found substantial continuity when the successor had retained most of the personnel and did not institute major changes in the operation of the business right after the acquisition. *G–K–G*, 39 F.3d at 748.

▮▮▮▮▮ Applying the substantial continuity successor liability exception as the Seventh Circuit did in *Tasemkin* and *G–K–G*, this Court will find a successor liable for CERCLA claims under the broader substantial continuity exception if the successor knew or had notice of the potential CERCLA liability[2] and there was substantial continuity in the operation of the business before and after the sale. In addition, the Court also can find a successor liable under the mere continuity exception of the successor liability doctrine, if plaintiffs show that there is identity of stocks, stockholders, and directors between the asset seller and the purchaser.

Clark claims, however, that the Court cannot apply successor liability to it in this case because its predecessor Old Clark is still a viable company from which Plaintiffs can recover. Clark cites several cases in support of his argument, but most of those cases deal with the successor liability exception called the product line exception, which applies in product liability cases. Under the product line exception, an asset purchaser is strictly liable in product liability claims for defects in products made by the predecessor before the sale, if the successor continues to sell the same product under the same trade name. *LaFountain v. Webb Industries Corp.*, 951 F.2d 544, 547 (3rd Cir.1991); *South Bend Lathe, Inc. v. Amsted Industries, Inc.*, 925

---

2. *Tasemkin* and *G–K–G* both require that the successor have notice of the claim. Neither of the cases imposes a duty on the asset purchaser to inquire about possible claims before the purchase. In *Wheeler v. Snyder Buick, Inc.*, 794 F.2d 1228, 1237 n. 9 (7th Cir.1986), an employment discrimination case, the court noted that perhaps the successor should be required to exercise due diligence in inquiring about outstanding claims. Nevertheless, the court decline to impose such requirement, leaving it up to Congress. The court held the successor not liable for employment discrimination where both the predecessor could provide monetary remedy, and the successor had no notice of the claim. *Id.* at 1237. However, previously in *Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 752 (7th Cir.1985), the appellate court stated that the successor must inquire about outstanding potential and actual liabilities with due diligence.

In considering when to apply the substantial continuity test under CERCLA, the court in *At-*lantic Richfield Co. v. Blosenski*, 847 F.Supp. 1261, 1287 n. 26 (E.D.Pa.1994), suggested that the test should be applied not only when the purchaser had knowledge or actual notice of CERCLA liability, but also when the purchaser should have known of the potential liability after reasonable investigation. In finding the successor liable under CERCLA even when the successor did not know about the possible liability, the New Hampshire court in *Kleen Laundry & Dry Cleaning Services*, 867 F.Supp. at 1144 n. 5, noted that defendant knew that the waste oil industry carries a risk of CERCLA liability and should have scrutinized the potential acquisition with due diligence.

Because the motions and the responses did not raise this issue, the Court does not decide whether a successor must inquire about potential CERCLA liabilities during the purchase if it wants to claim later that successor liability does not apply because it had no notice of the claim.

F.2d 1043, 1044–45 (7th Cir.1991). The exception does not apply unless the plaintiff lacks a potential remedy against the predecessor. *LaFountain*, 951 F.2d at 548. The courts justify imposing successor liability on the successor when the purchase of the product line led the predecessor to dissolve or deprived the plaintiff of a source of recovery. *Conway v. White Trucks*, 885 F.2d 90, 95 (3d Cir.1989). If there is potential remedy from the predecessor, the rationale behind imposing product line liability fails. *Id.*

Cases that apply the substantial continuity test instead of the product line do not require consistently that the plaintiff have no remedy against the predecessor before applying successor liability.[3] In an earlier decision that considered successor liability in a employment discrimination case, the Seventh Circuit stated:

> The successor doctrine is derived from equitable principles, and it would be grossly unfair, except in the most exceptional circumstances, to impose successor liability on an innocent purchaser when the predecessor is fully capable of providing relief or when the successor did not have the opportunity to protect itself by an indemnification clause in the acquisition agreement or a lower price.

*Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 750 (7th Cir.1985).

Nevertheless, courts have been willing to extend liability to the successors in employment cases even when the predecessors could provide a remedy. Those courts reasoned that monetary remedies in labor and employment discrimination disputes are often insufficient to compensate the plaintiffs. When the plaintiff is seeking reinstatement or enforcement of a labor agreement, the plaintiff will receive adequate compensation only by holding the successor liable. Once the court finds that successor liability applies to provide nonmonetary relief, the successor also is subject to monetary liability. *See, e.g., Golden State Bottling Co., Inc. v. N.L.R.B.*, 414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973). In *Golden State Bottling Co., Inc.*, 414 U.S. 168, 94 S.Ct. 414, the Supreme Court ordered the successor to comply with an NLRB order for reinstatement of plaintiff. In addition, the Supreme Court upheld an order that require both the successor and the predecessor to pay back wages to the plaintiff. Although the predecessor was before the Court, both the old and the new corporate entities were held liable to plaintiff for monetary relief.

In *G–K–G*, 39 F.3d 740, both the predecessor and the successor were before the Seventh Circuit as defendants. The court held the successor liable despite the fact that the predecessor could have provided a remedy for plaintiff and that the plaintiff was seeking only money damages. *Id.* at 748. However, in *G–K–G*, the defendants did not argue that successor liability does not apply when the plaintiff can recover from the predecessor. Because the question was not presented, the appellate court did not rule on that issue. Nevertheless, the court recognized that in cases where the actual violator could answer fully for the consequences of its actions, successor liability may not be justified. *Id.*

None of the CERCLA cases cited throughout this opinion or in the briefs filed with the motions discuss whether successor liability can apply when the predecessor still exists and can provide a remedy. In several of the cases the predecessor company apparently had been dissolved. *See, e.g., Carolina Transformer*, 978 F.2d 832; *Louisiana–Pa-*

---

**3.** The product line exception originated in product liability cases, while the substantial continuity test developed concurrently in product liability cases and in labor relations cases, as an extension of the traditional mere continuity exception. *Golden State Bottling Co., Inc. v. NLRB*, 414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973); *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174–175 (5th Cir.1985); Light, A.R., *"Product Line"* and *"Continuity of Enterprise" Theories of Corporate Successor Liability Under CERCLA*, 11 *Miss. C.L.Rev.* 63 (1990). The substantial continuity test is more narrow than the product line exception because it requires consideration of the similarity in business management and operations between the companies. Light, *supra* at 73.

In all the cases reviewed, courts applied the product line exception only in product liability cases, while the continuity of enterprise has been applied in different legal contexts. Both labor relations and product liability cases served as legal precedent when first applying successor liability to CERCLA. *See, e.g., Mexico Feed*, 980 F.2d at 487–488; *see also* Light, *supra*.

*cific,* 909 F.2d 1260; *Hunt's Generator Committee,* 863 F.Supp. 879; *Allied Corp.,* 812 F Supp. 124. In three cases, both the predecessor and successor were named as defendants. *See Mexico Feed,* 980 F.2d 478; *Atlantic Richfield Co. v. Blosenski,* 847 F.Supp. 1261 (E.D.Pa.1994); *City Environmental,* 814 F.Supp. 624 (applying Michigan law on successor liability). The successor was found not liable in *Mexico Feed* and in *City Environmental,* but the findings of the courts were based on the application of the mere continuity or the continuity of the enterprise test, not on the viability of the predecessor. One of the factors the *Mexico Feed* court considered in refusing to impose successor liability was that the plaintiff still could recover from the predecessor who was a defendant in that action. 980 F.2d at 490. This was, however, only a consideration in the decision and it was not determinative. Because none of these three cases discuss this issue, the Court cannot interpret these cases as implying that successor liability can apply regardless of the fate of the predecessor. Successor defendants in those cases simply might have forfeited this argument.

■ Although the law is far from clear as to whether the viability of the predecessor precludes successor liability in CERCLA cases, the Court decides that in this case Clark is not liable for claims arising from the conduct of its predecessor as a waste generator if Old Clark is a viable company that can provide Plaintiffs a remedy.[4] This is not a product line exception case and the Court is not applying the requirements for that exception. Nonetheless, the rationale for holding successors liable in the employment discrimination cases despite the existence of predecessors is not present here. Plaintiffs are seeking monetary damages. If the predecessor is still a functioning corporation which can compensate Plaintiffs, there is no equitable reason for holding Clark liable. The rationale behind successor liability in CERCLA, to distribute costs and to allocate

the burden of the cleanup to others than the taxpayers, *see Smith Land,* 851 F.2d at 91–92, are irrelevant if the predecessor can provide a remedy. Accordingly, if Old Clark exists and can provide a remedy to Plaintiffs, Clark is not liable.

■ Nevertheless, the Court cannot grant the motion to dismiss on this ground. Considering that no other case applying the substantial continuity exception of successor liability in a CERCLA case has stated explicitly that successor liability does not apply if the predecessor exists, the Court does not find that the Plaintiffs had to plead explicitly in the complaint that Old Clark has dissolved and/or is not able to provide relief. The complaint alleges that Clark is liable as the successor of Old Clark. Interpreting the pleadings in favor of Plaintiffs, the Court finds that Plaintiffs could present facts that support a case of successor liability against Clark in accordance with this opinion.

Neither can the Court grant the motion for summary judgment because the Court cannot conclude that there are no genuine issues of fact concerning the viability of Old Clark. The factual issue of whether Old Clark is still a company did not arise until Defendant filed its reply and included a certificate from the state of Missouri identifying a corporation named Apex Oil Company, Inc. Clark stated in its reply that Old Clark, Clark Oil & Refining Corporation, is known now as Apex Oil Company. However, Clark had stated in its memorandum in support of the motion, that Apex Oil Company had acquired Old Clark apparently as a distinct company wholly owned by Apex. Did Old Clark and its parent Apex merge? Did the original Apex Oil disappear and Old Clark took its name?

The certificate of incorporation submitted by Clark does not prove that Old Clark is a viable company. It only proves that a company named Apex Oil Company exists. Even if the allegations in the briefs were accurate and Old Clark is now Apex Oil, the Court will

---

**4.** The question remains of whether Clark can be held liable if Old Clark is still in existence but cannot provide a remedy now. The *Musikiwamba* court implied that plaintiff may have a case against the successor if the predecessor, though still a company, does not have the assets to pay

plaintiff *as a result* of the asset sale. 760 F.2d at 752. Without the benefit of briefs from the parties on this question, and considering that it might not be an issue on this case, the Court will not answer the question in this order.

not take the allegations as facts proven for the purpose of summary judgment because these allegations are not supported by evidence.

When deciding questions of successor liability, the Seventh Circuit has warned that the application of liability depends on the legal and factual circumstances of each case. *Tasemkin* 59 F.3d at 49. "[I]n the light of the difficulty of the successorship question, the myriad factual circumstances and legal contexts in which it can arise, the absence of congressional guidance to its resolution, emphasis on the facts of each case as it arises is especially appropriate." *Id.* (citing *Howard Johnson Co., Inc. v. Detroit Local Joint Exec. Bd.*, 417 U.S. 249, 256, 94 S.Ct. 2236, 2240, 41 L.Ed.2d 46 (1974)).

■ Because of the emphasis on the facts to decide the question of successor liability, Plaintiffs have asked the Court to deny the motion for summary judgment under Federal Rule of Civil Procedure 56(f). Rule 56(f) allows the nonmoving party to ask the court to deny a motion for summary judgment pending the completion of discovery. Before a court can grant a Rule 56(f) petition, the nonmoving party should demonstrate why it cannot respond to the movant's motion and how postponement will enable it by discovery or other means to prove that there are genuine issues of material fact. *Korf v. Ball State University*, 726 F.2d 1222, 1230 (7th Cir. 1984); *Lamb's Patio Theatre, Inc. v. Universal Film Exchanges, Inc.*, 582 F.2d 1068, 1071 (7th Cir.1978).

Plaintiffs, in their response, have shown effectively how discovery will enable them to prove that there are genuine issues of material fact regarding whether Clark is liable as a successor of Old Clark.[5] Plaintiffs enumerate facts such as ownership of Clark and Old Clark, retention of employees and supervisory personnel, continuity of operations, and knowledge by Clark of possible CERCLA claims, as factual questions which can be answered through discovery and which could allow Plaintiffs to prove their successor liability claim. These issues of facts can be material in deciding the successor liability question and thereby preclude entry of summary judgment on this issue.

## B. *SALE PURSUANT TO BANKRUPTCY*

Clark's foremost argument in its motions to dismiss and/or for summary judgment is that when it purchased Old Clark's assets during the bankruptcy proceedings, the bankruptcy court approved the sale of the assets free and clear of all liens and claims including Plaintiffs' claims. If Clark is correct, the sale would preclude liability regardless of the successorship doctrine.

The fact that the asset sale in this case took place in the context of bankruptcy is not determinative of the question of liability. The *Tasemkin* case, 59 F.3d 48, discussed liability as applied to a successor that acquired the assets in a bankruptcy foreclosure. The bankruptcy debtor owed money to a union pension fund. The union sued the company which had obtained the assets of the debtor during the bankruptcy proceedings. The Seventh Circuit held that the fact that the new owner acquired the company in a bankruptcy foreclosure was irrelevant to the question of liability as applied to successors. *Id.* at 51. *See also R.C.M. Executive Gallery Corp. v. Rols Capital Co.*, 901 F.Supp. 630 (S.D.N.Y.1995) (holding that to an asset purchaser can be held liable under successor liability even when the sale occurred pursuant to bankruptcy).

Clark, however, argues that the sale of assets specifically approved by the bankruptcy court was "free and clear" of all potential liabilities:

In addition, Defendant has not presented to the Court uncontroverted facts on the factors affecting successor liability, because Defendant did not comply with Northern District of Indiana Local Rule 56.1 which requires a "Statement of Material Facts." Therefore, there are no facts properly before the court that Plaintiffs must refute.

---

5. Defendant argues that the Court should not deny summary judgment on the basis that discovery could uncover genuine issues of facts, because Plaintiffs did not file a supporting affidavit as indicated in Rule 56(f). Although Plaintiffs did not include an affidavit, they supported their Rule 56(f) petition referring to the exhibits introduced by Clark.

Pursuant to 11 U.S.C. § 363(f), the transfer and conveyances of the purchased assets to [Clark] shall be free and clear of all liens, claims, taxes, encumbrances, obligations, contractual commitments and interests....

*In re Apex Oil Co.*, 92 B.R. 847 (Bankr. E.D.Mo.1988) (order approving sale of assets to AOC/Clark). Section 363(f) of Title 11 of the U.S.Code gives a bankruptcy trustee the power to sell the assets of the debtor "free and clear of any interests in such property."

The courts have not defined "free and clear of any interest in such property" under 11 U.S.C. section 363(f) clearly. 2 Daniel R. Cowas, *Bankruptcy Law and Practice* § 11.9(d) (6th ed. 1994); *see also In re Paris Industries Corp.*, 132 B.R. 504, 509 (D.Me. 1991); *In re All American of Ashburn, Inc.*, 56 B.R. 186, 189 (Bankr.N.D.Ga.1986). In dicta [6], the Seventh Circuit stated that section 363(f) refers only to liens. *Zerand–Bernal, Inc. v. Cox*, 23 F.3d 159, 163 (7th Cir.1994).

In *Zerand*, a product made by the debtor prior to the section 363 sale injured the plaintiff, several years after the sale. The plaintiff sued the buyer under product liability. The order approving the sale included a provision making the sale " 'free and clear of any liens, claims or encumbrances of any sort or nature' " and confirming the terms of the sale agreement. *Id.* at 161. The appellate court stated that even though the assets had been sold free and clear of liens and encumbrances, the victim in that case was not trying to enforce the lien and the sale order did not preclude his claims. *Id.* at 163.

Similarly, in *In re Fairchild Aircraft Corp.*, 184 B.R. 910, 917 (Bankr.W.D.Tex. 1995), the court concluded that section 363(f) refers only to *in rem* interests that affect property. The statute itself limits the interests that can be discharged by section 363(f) to "interest in such property." Therefore, the *Fairchild Aircraft* court concluded, section 363(f) includes only *in rem* interests. 184 B.R. at 917. Otherwise, "in such property" would be superfluous. *Id.* at 918.

Defendant urges the Court to look at the plain meaning of the word "interest." Defendant argues that "interest" includes a broad category of interests such as liens, claims, rights, etc. Defendant further argues that the Bankruptcy Reform Act of 1978 (known as the Bankruptcy Code) includes a provision specifically defining "liens," and that Congress would have included the term "lien" in 363(f) if it intended the section to include only liens. *See In re P.K.R. Convalescent Centers, Inc.*, 189 B.R. 90, 94 (Bankr.E.D.Va.1995); *In re WBQ Partnership*, 189 B.R. 97, 105 (Bankr.Ct. E.D.Va.1995). In addition, Defendant argues that the interest of Plaintiffs in this case is a property interest because the only way that Plaintiffs' claim reaches Defendant is through the property that Clark purchased from Old Clark. *See WBQ Partnership*, 189 B.R. at 105. Successor liability, however, does not turn a claim into an *in rem* interest simply because it allows recovery from an asset purchaser. *In re Fairchild Aircraft Corp.*, 184 B.R. at 920.

Other cases in other circuits [7] support a broad interpretation of section 363(f). Those

---

**6.** The language of the appellate court in *Zerand* was dictum because it was not necessary for the decision of the case. *Zerand* decided whether the bankruptcy court had jurisdiction to intervene in an separate action against the asset purchaser years after the bankruptcy proceedings had closed. While the statements of the court regarding section 363 were not necessary for the holding of the case, the court's language is an explicit and clear interpretation of the meaning of section 363(f).

**7.** The two Seventh Circuit cases cited by defendant concerning section 363(f) sales do not concern the issue at hand, which is what interests are covered in a section 363 sale that is made

free and clear of any interest in the property. In *Matter of Met–L–Wood Corp.*, 861 F.2d 1012, 1016, 1018 (7th Cir.1988), *cert. denied, Gekas v. Pipin*, 490 U.S. 1006, 109 S.Ct. 1642, 104 L.Ed.2d 157 (1989), the court considered a suit that challenged the validity of the asset sales. Similarly, in *Matter of Edwards*, 962 F.2d 641 (7th Cir.1992), the appellate court considered a petition to rescind the sale. The court also held that the bankruptcy court did not have jurisdiction to find that the creditor had an interest in the property sold because the property was no longer under the jurisdiction of the bankruptcy court. *Id.* This jurisdictional holding is consistent with the opinion in *Zerand.*

courts have used section 363(f) to preclude claims against successors who purchased assets in a bankruptcy sale even when the claims were not based on *in rem* interests. *See In re P.K.R. Convalescent Centers, Inc.,* 189 B.R. 90 (Bankr.E.D.Va.1995) (holding that 363(f) permitted sale free and clear of state's statutory tax interest on the property); *In re WBQ Partnership,* 189 B.R. 97 (Bankr.E.D.Va.1995) (same); *In re White Motor Credit Corp.,* 75 B.R. 944 (Bankr. N.D.Ohio 1987) (holding that 363(f) precluded tort claims against asset purchaser); *In re All American of Ashburn, Inc.,* 56 B.R. 186 (Bankr.N.D.Ga.1986) (holding that 363(f) precluded successor liability in product liability claim); *In re New England Fish Co.,* 19 B.R. 323 (Bankr.W.D.Wash.1982) (holding that a free and clear sale under the Bankruptcy Code precludes Title VII claims against the successor); *see also Forde v. Kee–Lox Mfg. Co., Inc.,* 437 F.Supp. 631 (W.D.N.Y.1977), *aff'd on other grounds,* 584 F.2d 4 (2d Cir. 1978) (holding that a sale under the Bankruptcy Act of 1878 free and clear of liens and claims precludes successor liability on employment discrimination claim).

Two main arguments underlay the decisions in the cases cited above: first, that fear of successor liability will discourage potential buyers in sales conducted pursuant to bankruptcy; second, that the successorship doctrine frustrates the orderly scheme of the bankruptcy laws by allowing some unsecured creditors to recover without regard to the priority order of the bankruptcy proceedings. *Tasemkin,* 59 F.3d at 50–51. Defendant proposes these arguments in its briefs to support its motions.

The Seventh Circuit, however, has criticized these arguments. *See Tasemkin,* 59 F.3d at 50 (citing *Forde,* 437 F.Supp. 631; *In re White Motor Credit Corp.,* 75 B.R. 944; *In re All American of Ashburn, Inc.,* 56 B.R. 186; *In re New England Fish Co.,* 19 B.R. 323). The appellate court found the first argument unconvincing because asset purchasers generally face the risk of successor liability whether or not the sellers are bankrupt. The court found no reason to give special protection to the purchasers of the assets of a bankruptcy debtor. The appel-

late court also rejected the second argument because it found that the priority order established during the bankruptcy proceeding becomes irrelevant once the bankruptcy proceedings are completed. *Id.; see also R.C.M. Executive Gallery Corp.,* 901 F.Supp. at 637–38.

In *Zerand,* the Seventh Circuit also criticized the idea that buyers in bankruptcy proceedings should be protected from successor liability. 23 F.3d at 163. The court dismissed the notion that bankruptcy courts have the power to enjoin all future lawsuits against buyers at bankruptcy sales in order to maximize the sale price. To do so, the appellate court concluded, would encourage bankruptcy filings to allow debtors to sell free of all liabilities, an advantage that asset sellers do not have outside the bankruptcy laws.

In deciding whether the sale to Clark precludes successor liability for Plaintiffs' CERCLA claims, the Court does not have to decide what type of interests are covered by the section 363(f) language, because the Court can decide on other grounds. As explained *infra,* the cases suggest that if the CERCLA claim could have been a claim in bankruptcy against Old Clark, the bankruptcy court had the equitable power to discharge the claim against the asset purchaser independently of section 363(f). If the claim arose after the consummation of the bankruptcy proceedings, the bankruptcy court did not have the power to discharge that claim.

This is the approach that the bankruptcy court used in *In re Fairchild Aircraft Corp.,* 184 B.R. 910, a case involving product liability. The court first determined that a section 363(f) sale only discharged *in rem* interests and that claims arising from personal liability were not covered by the section. *Id.* at 918. The court, however, did not decide the case based on that finding. Rather, the court considered whether the claims presented could have been filed against the debtor during bankruptcy. If the plaintiffs could have filed their claims against the debtor, the claims were within the discharge power of the bankruptcy court. *Id.* at 919. The bankruptcy court's "equitable power to sell free and clear must be interpreted consistent with

its power to discharge claims under a plan of reorganization." *In re White Motor Credit,* 75 B.R. at 948–49.

In all the cited opinions that precluded successor liability claims against asset purchasers in bankruptcy, the claimants were in front of the bankruptcy court during the bankruptcy proceedings, or the court found that the claimants should have brought their claims during the bankruptcy proceedings. *See In re P.K.R. Convalescent Centers,* 189 B.R. 90 (bankruptcy court enjoins creditor before the court from suing asset purchaser before approving the sale); *In re WBQ Partnership,* 189 B.R. 97 (same); *In re White Motor Credit,* 75 B.R. 944 (claim arose before debtor filed for bankruptcy and creditor could have filed a claim against the bankruptcy estate on the ongoing bankruptcy proceedings); *In re All American,* 56 B.R. 186 (creditor did not file a claim against debtor even though the claim ripened before bankruptcy and creditor knew that debtor had filed for bankruptcy); *In re New England Fish,* 19 B.R. 323 (creditor had filed suit against debtor before the latter filed for bankruptcy); *see also Forde,* 437 F.Supp. 631 ("The plaintiff's remedy in this case was to file a claim with the trustee in bankruptcy", when the cause of action accrued before the debtor filed for bankruptcy); *In re Paris Industries Corp.,* 132 B.R. 504 (enjoining creditors from filing a suit against the asset purchaser when they can file a claim against the predecessor in the bankruptcy court). In other words, all the creditors in these cited cases had filed or should had filed their claims against the asset seller, the predecessor, in the bankruptcy court.

By contrast, the product liability plaintiffs before the *Zerand* court had suffered their injuries years after the bankruptcy proceedings had concluded. The court noted that since the plaintiffs' claim did not arise until years after the consummation of the bankruptcy proceedings, it was not included in the discharge order of the bankruptcy court. In a similar case that also reviewed the jurisdiction of the bankruptcy court to enjoin proceedings in another court against a buyer of the assets of a debtor, the Fifth Circuit stated, in dicta, that the bankruptcy court cannot sell assets free and clear of all claims asserted by product liability plaintiffs when their claims did not arise until five years after the bankruptcy proceedings closed. *See Matter of Mooney Aircraft, Inc.,* 730 F.2d 367, 375 (5th Cir.1984).[8] "[A] sale free and clear of claims cannot divest a . . . claim when the claimant does not have a sustainable cause of action at the time of the discharge." *In re All American,* 56 B.R. at 189.

■ In conclusion, it appears that while the bankruptcy courts might have the power to sell assets free and clear of any interest that could be brought against the bankruptcy estate during bankruptcy,[9] either through section 363(f) or through the powers of the bankruptcy court under other sections of the Code, a sale free and clear does not include future claims that did not arise until after the bankruptcy proceedings concluded. This interpretation is consistent with the description in *Tasemkin* of sales under section 363(f) as sales which "can be made free and clear of *existing* interests." 59 F.3d at 50 n. 2 (emphasis added); *but see In re Paris Industries Corp.,* 132 B.R. 504, 510 n. 14 (where in dicta the court suggested that a bankruptcy court can approve a sale free and clear not only from existing claims but also from future claims).

■ Applying that interpretation to this case, the Court finds that the asset sale

---

8. Although *Mooney Aircraft* was a case under the old Bankruptcy Act of 1898 which did not include section 363(f), it also involved a sale of assets pursuant to a bankruptcy reorganization.

9. In *Zerand* the Seventh Circuit stated in dicta that bankruptcy discharges protect only the debtor and not the successor. 23 F.3d at 163. This is the most extreme interpretation possible of the effect of a bankruptcy discharge. This Court hesitates to adopt this conclusion when it does

not have to do so. Even if the bankruptcy discharge did not apply to Clark, successor liability will not apply if Plaintiffs could have brought a claim against the predecessor in the bankruptcy proceedings. This is because successor liability is limited when the plaintiff could have obtained a remedy from the predecessor. *But see Tasemkin,* 59 F.3d at 51 (stating that the prior availability of relief from the predecessor is a factor of significant weight, but it is not dispositive to the question of successor liability).

approved by the bankruptcy court[10] precludes suits against Clark for any claim that could have been brought against Old Clark during the bankruptcy. However, if the CERCLA claim did not arise until after the bankruptcy proceedings concluded, the bankruptcy court could not have discharged a claim which did not even exist at the time.

■ In addition to arguing that the sales order freed Clark from Plaintiffs' claim, Clark also argues that in approving the Asset Purchase Agreement the bankruptcy court freed Clark from Old Clark's environment liabilities, because the Agreement included explicit language stating that Clark would not assume liability for environmental claims. However, the fact that the Purchase Asset Agreement explicitly states that Clark will not assume any environmental liability arising from the operation of the facilities prior to the sale does not affect a determination of liability under CERCLA. Section 9607(e) of CERCLA precludes the determination of CERCLA liability by agreement between the parties. *Harley–Davidson, Inc. v. Minstar, Inc.*, 41 F.3d 341, 342 (7th Cir.1994); *Rodenbeck v. Marathon Petroleum Co.*, 742 F.Supp. 1448, 1456 (N.D.Ind.1990). Private

parties retain their freedom to contract for indemnification agreements, however, and Clark might have a cause of action against Old Clark if it is held liable on this case. *Harley–Davidson*, 41 F.3d 341. Nonetheless, Clark's purchase agreement excluding environmental liability does not preclude the liability of Clark in this action.

To decide whether Plaintiffs' claim was discharged by the bankruptcy court, it becomes important to determine whether Plaintiffs had a CERCLA claim against Old Clark which they should have brought against it during the bankruptcy proceedings.[11] The Seventh Circuit has established a test to determine when a party has a CERCLA claim for the purpose of bankruptcy, so that failure to raise the claim during the bankruptcy proceedings bars a suit against the successors of the debtor.[12] *See Matter of Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 3 F.3d 200, 201 (7th Cir.1993) (*"Matter of Chicago II"*); *Matter of Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 974 F.2d 775, 779 (7th Cir.1992) (*"Matter of Chicago I"*).[13] Whether a prior bankruptcy discharged the debtor of these claims becomes

---

10. Contrary to what Defendant implies in its reply, the Court is not attacking or challenging the order of the bankruptcy court. The Court merely interprets the order within the powers that the *statute* grants the bankruptcy court, an interpretation which is consistent with all the cited cases as well as with the order of the bankruptcy court approving the sale.

Defendant points to the language in its motion where it asked the bankruptcy court to approve the assets sale free of claims "whether incurred or arising before or after the commencement of the case." Defendant's Reply, p. 14. The order of the bankruptcy court granting the motion, however, does not contain this language.

11. Because this question becomes the foremost consideration in deciding whether Old Clark's bankruptcy discharged the CERCLA claims, whether the sale complied with the section 363 requirements is irrelevant. Defendant discusses this at length in its reply.

12. In its holding, the appellate court attempted to resolve the tension between the sometimes conflicting goals of CERCLA and the Bankruptcy Code. *See Matter of Chicago II*, 3 F.3d 200, 201 (7th Cir.1993). CERCLA attempts to facilitate the cleanup of environmental contamination by . distributing the cost among a broad category of parties directly and indirectly responsible for the

pollution. *Matter of Chicago II*, 3 F.3d at 201; *Matter of Chicago I*, 974 F.2d at 779. The Code, to achieve its goals of maximizing payments to creditors while giving debtors a fresh start, gives *the court the power to preclude claims not timely filed during the bankruptcy proceeding. Matter of Chicago II*, 3 F.3d at 201; *Matter of Chicago I*, 974 F.2d at 779. However, cutting claims prematurely during bankruptcy can impede CERCLA's distribution scheme. *Matter of Chicago I*, 974 F.2d at 779.

The appellate court was hesitant to impose a rule that would cut out potential CERCLA claims when the creditors had no reason to know about the release of hazardous substances. *Id.* At the same time, the court refused to make CERCLA claims contingent on whether the claimant already had incurred response costs because such a rule would give the claimant too much control over the accrual of its claims. *Id.* at 786.

13. While both *Matter of Chicago I* and *II* discussed "claims" under the Bankruptcy Act of 1898, both opinions intimate that their discussions would apply also to cases under the Bankruptcy Code. *See Matter of Chicago II*, 3 F.3d at 202; *Matter of Chicago I*, 974 F.2d at 781. Because Apex and its subsidiaries filed for bankruptcy in 1987, the bankruptcy statute applicable to this case is the Bankruptcy Code as amended.

an issue when hazardous wastes have contaminated a site prior to bankruptcy but are not discovered until later, or when claimants have not been able to identify the debtor as a potential responsible party until after the bankruptcy proceedings concluded.

 In the Seventh Circuit, a creditor has a contingent CERCLA claim for purposes of bankruptcy when the potential claimant "can tie the bankruptcy debtor to a known release of a hazardous substance which this potential claimant knows will lead to CERCLA response costs." *Matter of Chicago I,* 974 F.2d at 786. The key in determining whether a CERCLA claim exists is the knowledge or foreseeability by the potential CERCLA claimant. "[T]he inquiry must center on whether the potential CERCLA claimant has 'sufficient information to give rise to a claim or contingent CERCLA claim' before the consummation date of the bankruptcy." *AM Int'l v. Datacard Corp.,* 146 B.R. 391, 394 (N.D.Ill.1992).

In *Matter of Chicago I,* a letter informed the claimant of the spill of an extremely hazardous substance that would require storage or treatment, and the claimant conducted testing of contamination in the property of the debtor. The claimant did not file the claim with the bankruptcy court and therefore lost its claim because it knew of its potential CERCLA claim before the consummation of bankruptcy. 974 F.2d 775; *see also Matter of Chicago II,* 3 F.3d 200 (where bankruptcy discharged the CERCLA claim of the buyer against the debtor because the buyer of a property belonging to the debtor knew of surface oil contamination prior to the confirmation of bankruptcy, and was aware that the area where the property was located had been listed on the National Priority List for CERCLA cleanup); *AM International,* 146 B.R. 391 (denying summary judgment as to whether bankruptcy had discharged the CERCLA claim because there was a genuine issue of fact regarding the knowledge of the creditor of the existence of its claim).

 Applying the law as stated by the appellate court, the bankruptcy proceedings that led to the sale and purchase of the Clark assets discharged the CERCLA claims asserted by Plaintiffs if the claimants (1) had actual or constructive knowledge that a release or threatened release of hazardous substances had occurred, and (2) could tie Old Clark, the bankruptcy debtor, to the release prior to the confirmation of the bankruptcy reorganization. Neither the motions, nor the responses, nor the complaint show when EPA or the claimants discovered the release of hazardous substances at the Ninth Avenue Superfund site, or when they identified or could have identified Clark or Old Clark as a potential responsible party. Without those facts the Court cannot determine whether the bankruptcy proceedings discharged the CERCLA claim for the disposal of waste generated by Old Clark at the Ninth Avenue site.

 Plaintiffs argue that the bankruptcy court could not have discharged their claims because they did not receive formal notice of the bankruptcy proceeding. Formal notice to Plaintiffs, however, is not determinative of whether the bankruptcy discharged Old Clark's CERCLA liability. In *Matter of Chicago I,* 974 F.2d at 788, the court held that the bankruptcy laws require that only known creditors of the debtor receive actual notice of the proceeding. Constructive notice, provided through publication in this case, is sufficient for unknown potential creditors. *See* Def.'s Reply, Ex. C. Where the debtor or the bankruptcy trustee do not know of the potential liability, they do not have to notify potential debtors. *Matter of Chicago I,* 974 F.2d at 788; *see also AM Int'l,* 146 B.R. at 403. As already mentioned, the record does not indicate whether Old Clark or Clark knew of the potential liability at the Ninth Avenue site.

Taking the allegations in Plaintiffs' complaint as true, the Court cannot dismiss the actions against Clark. Plaintiffs alleged that Clark is the successor of a company that arranged for the disposal of waste. Plaintiffs could prove facts that would support their claim against Clark. The fact that Clark became the successor of Old Clark through a section 363 sale of assets during bankruptcy proceedings does not mandate dismissal. Therefore, the Court **DENIES** the motions to dismiss.

Because the Court has considered the documents outside the pleadings submitted by Clark, the Court examines the motions under summary judgment standards. To succeed in its motions for summary judgment, Clark needed to present undisputed facts showing that it cannot be liable under a successor liability exception for claims against Old Clark, or that Plaintiffs' claim should have been brought against Old Clark during bankruptcy. The fact alone that Clark became a successor through a bankruptcy sale does not preclude liability as a matter of law. Since a determination of successor liability and of the preclusion of CERCLA claims by bankruptcy are determined by factual circumstances not established in the record, the Court cannot grant the motions for summary judgment at this moment. Therefore, the Court **DENIES** the alternative Motions for Summary Judgment.

*CONCLUSION*

For the foregoing reasons, Defendant Clark Refining & Marketing Inc.'s Motion to Dismiss or, Alternatively, for Summary Judgment; Defendant Clark Refining & Marketing, Inc.'s Motion to Dismiss or, Alternatively, for Summary Judgment Against Crossclaim of Defendant Barber–Greene Company; and Defendant Clark Refining & Marketing, Inc.'s Motion to Dismiss or, Alternatively, for Summary Judgment Against Crossclaim of Defendant Commander Packaging Corporation, are hereby **DENIED.**